THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOROTHY LYBARGER, Defendant-Appellant.

Third District   No. 3—89—0309

Opinion filed June 15, 1990.

STOUDER, J., dissenting.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Joseph Navarro, State's Attorney, of Ottawa (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

A jury convicted the defendant, Dorothy Lybarger, of two counts of criminal sexual assault and one count of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, pars. 12—13(a)(2), (a)(3), 12—14(b)(1)). Judgment was entered only on the aggravated criminal sex-

ual assault count, and the defendant was sentenced to a seven-year term of imprisonment. The defendant appeals. We affirm.

In the instant case, the record shows that the complainant, James Lybarger, testified that when he was nine years old and the defendant, his mother, was pregnant with his brother Chris, she called him into her bedroom and told him to take off his clothes and lie on the bed. His mother then removed her clothing and lay on top of him. James stated that his mother touched his penis with her hand and mouth and it got big. She then put his penis in her vagina and moved up and down. After what seemed like the time length of "two cartoons," his mother got up and put on her clothes.

James also testified that his mother told him not to tell anyone about the incident. He stated, however, that he did tell child protection investigator Randy Constantine about it. James testified that the incident happened in the summer, but also stated that it must have happened on a Saturday because he did not have school the next day. James then repeated his explanation of the incident using anatomically correct dolls.

Investigator Randy Constantine of the Illinois Department of Children and Family Services (DCFS) testified that he interviewed James about seven months after the incident. He stated that James' statement to him at that time was substantially the same as James' trial testimony. He also stated that James was not specific regarding the date and the time of the incident.

The defendant testified in her own defense and denied that the incident had occurred. Other evidence presented showed that Chris was born on December 6, 1987.

On appeal, the defendant's first argument is that her conviction for aggravated criminal sexual assault should be reversed. Specifically, she argues that the State failed to prove her guilty beyond a reasonable doubt, since the testimony of the complaining witness was not clear and convincing or otherwise sufficiently corroborated. She contends that the complainant's testimony was unclear as to the date and time of the incident.

■■ When a reviewing court is presented with a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) In a prosecution for aggravated criminal sexual assault, where the defendant denies the charge, the conviction will be upheld when the testimony of the complaining witness is clear

and convincing or is otherwise sufficiently corroborated. (*People v. Daniels* (1987), 164 Ill. App. 3d 1055, 518 N.E.2d 669.) The fact that a complainant cannot remember the exact date of the offense does not render his testimony unclear, but rather any inconsistency in that regard goes to the weight of his testimony. (*People v. Sexton* (1987), 162 Ill. App. 3d 607, 515 N.E.2d 1359.) Finally, the failure of a young sexual assault victim to make a prompt complaint is understandable, since children have a natural sense of shame, fear, guilt, and embarrassment. *People v. Fritz* (1979), 77 Ill. App. 3d 1, 395 N.E.2d 736.

■ In the instant case, we find that the evidence was not so improbable as to raise a reasonable doubt about the defendant's guilt. The complainant's testimony at trial was detailed and unwavering regarding the defendant's conduct during the commission of the offense. In addition, the complainant's testimony was corroborated by the testimony of the DCFS investigator.

We do not find the fact that the complainant may have been confused as to the exact time of the incident to have detracted from the reasonableness of his story as a whole. As previously stated, such inconsistencies go to the weight of the testimony and as such are an issue for the jury. Accordingly, we hold that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of aggravated criminal sexual assault.

The defendant next argues that she was denied a fair trial due to prosecutorial misconduct during closing arguments. Specifically, she contends that reversible error occurred when the prosecutor referred to the reasonable doubt standard of proof in his closing argument.

■ It is well established that the concept of reasonable doubt should not be defined by the trial court or counsel. (*People v. Malmenato* (1958), 14 Ill. 2d 52, 150 N.E.2d 806.) However, a prosecutor must not be severely limited in his closing, and it is therefore proper for a prosecutor to comment on the burden of proof if his comments do not distort that burden. *People v. Wade* (1988), 167 Ill. App. 3d 921, 522 N.E.2d 285.

In the instant case, during the prosecutor's final argument, he made the following remarks:

"I anticipate that Mr. Balestri is going to tell us about reasonable doubt, first of all. I can tell you this. Beyond reasonable doubt does not mean beyond all doubt, shadow of a doubt, or a doubt created by imagination of counsel."

We find that these comments did not violate the above-stated principles of law. We therefore hold that no reversible error was committed in the prosecutor's closing argument.

■ The defendant's final argument on appeal is that the trial court considered an improper factor in aggravation when sentencing her. She argues that the trial court improperly considered a victim impact statement prepared by a therapist, John Herrington, who was not a victim in the case.

The State responds that the defendant has waived this argument. We note that the record reveals that the defendant did not object to the trial court's consideration of this statement at the sentencing hearing. We further note that in the absence of plain error, a nonjurisdictional question, such as the consideration of an improper factor in aggravation, which is not raised in the trial court may not be presented for the first time on review. (*People v. Montague* (1986), 149 Ill. App. 3d 332, 500 N.E.2d 592.) Accordingly, we agree with the State that the defendant has waived this issue.

However, even assuming that the alleged error was not waived, we would nonetheless find any such error harmless. The record reveals that the information contained in the statement was also contained elsewhere in the presentence report.

The judgment of the circuit court of La Salle County is affirmed.

Affirmed.

HEIPLE, P.J., concurs.

JUSTICE STOUDER, dissenting:

I dissent from the majority's determination that the testimony of James Lybarger was corroborated, and I would reverse the defendant's conviction. Although testimony regarding an out-of-court statement made by a child is admissible in prosecutions for sexual acts perpetrated upon that child (see Ill. Rev. Stat. 1987, ch. 38, par. 115—10), I find nothing in the decision or the record which has the legal effect of corroborating the child's testimony in this case. The testimony of Investigator Constantine concerned a statement made by James many months after the alleged incident. James was removed from the defendant's home on December 11, 1987. He related the details of the alleged assault to Constantine on July 27, 1988. The record indicates that he first related the incident to members of his foster family and a counselor around July 1, 1988. His statements to Constantine were made after James was seen by a social worker for DCFS, who had James "perform a play" of what occurred.

In addition, the date of the alleged incident was extremely unclear. James testified that the incident took place in the summer,

when his mother was "big" with his little brother, Chris. The record shows Chris was born on December 7, 1987. When James was interviewed by Constantine he stated that the incident occurred before the defendant met Ken Thompson. The record shows that Ken Thompson was the father of Chris.

The absence of corroboration leads to the conclusion that the jury's finding was based on speculation and should be reversed.