THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL PRIOLA, Defendant-Appellant.

Second District   No. 2—88—1014

Opinion filed October 2, 1990.

402

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and

David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Michael Priola, was convicted of aggravated criminal sexual abuse (Ill. Rev. Stat. 1987, ch. 38, par. 12—16) and sentenced to a three-year term of imprisonment. On appeal, defendant contends his conviction should be reversed for the following reasons: (1) the trial court refused to instruct the jury that defendant could only be convicted of the above offense if the jury found that he touched the victim's vaginal area, as charged in the indictment; (2) the evidence was insufficient to support a conviction beyond a reasonable doubt because the victim's testimony was not clear and convincing and she did not testify that defendant touched her vaginal area; (3) the trial court erred by permitting two investigators who testified to relate excessive details concerning the victim's corroborative complaints; (4) the trial court violated defendant's sixth amendment right to a public trial by excluding nonmedia spectators from the trial during the victim's testimony and the testimony of her brother and sister, who were also alleged victims; (5) the trial court erroneously denied defendant's motion for a mistrial after the jurors witnessed an emotional reunion between the victim's sister and her father outside the courtroom; (6) the trial court erred by failing to instruct the jury as to why several charges had been removed from its consideration; and (7) the court erred by permitting the State to ask certain improper questions to the victim's brother on cross-examination. Defendant also argues that the order directing him to pay $2,250 as reimbursement for the services of the assistant public defender who represented him should be reversed because the trial court failed to consider his financial circumstances and the order notifying the Secretary of State of his conviction should be reversed because automatic revocation of a driver's license as a result of a sex offense was held unconstitutional in *People v. Lindner* (1989), 127 Ill. 2d 174. We affirm in part, modify in part, and reverse in part.

The grand jury returned a six-count indictment against defendant which charged him with sexual offenses against three children, two sisters and their brother. Defendant was only convicted of the charge contained in count IV, which alleged that he "committed the offense of aggravated criminal sexual abuse" in that he "committed an act of sexual conduct with [A.A.], who was under 13 years of age when the act was committed, in that the defendant knowingly touched the vaginal area of [A.A.] for the purpose of the sexual arousal of defendant."

Count IV further alleged that this offense took place sometime between December 26, 1986, and March 3, 1987.

The victim, A.A., was eight years old at the time of the alleged offense and 10 years old at the time of defendant's trial. During the time span mentioned in count IV of the indictment, she resided in Westmont with her mother, stepfather, sister, and brother. A.A. testified that during the period in question, a family friend named Willy, who lived across the street, brought defendant over to her home on a number of occasions. Sometimes, defendant would go into the bedroom of the three children when they were about to go to bed. A.A. testified that defendant would read them bedtime stories and would rub her. She stated that defendant "would rub above my behind and sometimes between my legs."

When asked to demonstrate on an anatomically correct doll where defendant touched her, A.A. touched the inside portion of the doll's upper left leg, the lower part of its back, and the top of its buttocks. A.A. also testified that defendant had placed his penis in her mouth and demonstrated this using two anatomically correct dolls. According to A.A., she told her mother and her Aunt Dana what defendant had done. When A.A. later went to stay with her father and stepmother in Moline, she told her stepmother what defendant had done and also told a detective.

A.A. stated on cross-examination that she had talked about what defendant had done to her many times and had given different versions of what happened. She testified further that a portion of her testimony was based upon what others told her had happened, although she also said she was telling the truth. On redirect examination, the prosecuting attorney asked A.A. if she remembered defendant's penis in her mouth, and she responded "No." A.A. then stated that she remembered that he did it. When the prosecuting attorney asked if A.A. remembered that this had happened, she responded, "No." The attorney then asked, "Did it happen?" and A.A. said "Yes." When the attorney asked for an explanation, A.A. said, "I mean, it did happen but I kind of like forgot about it."

A.A's sister, M.A., who was seven years old at the time of trial, testified briefly but was unable to continue and asked to go home. The trial court struck her testimony. Defendant moved for a mistrial because, shortly after M.A. left the witness stand, the jurors were in the hallway outside the courtroom, and they witnessed an emotional reunion between M.A. and her father. After hearing testimony on this motion, the trial court denied it. The trial judge admonished the jurors to disregard anything they had seen outside the courtroom.

Richard Shannahan and Penny Ingersoll both testified about corroborative complaints made by A.A. to them during two interviews on September 29, 1987. Shannahan had been an investigator for the Illinois State Police for approximately 10 years and had spent the previous three years working almost exclusively on homicide and child abuse cases. Ingersoll had worked with the Department of Children and Family Services (DCFS) investigating child abuse and neglect cases for almost seven years. Before permitting them to testify, the trial judge conducted a hearing pursuant to section 115—10(a)(2) of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(a)(2)), and determined there were sufficient safeguards of reliability to justify their testimony about A.A.'s corroborative complaints.

On July 23, 1987, A.A., her sister, and her brother went to stay with Mike and Cindy Aubert in Moline because their mother, Andrea Stawicki, had been injured in a swimming pool accident. The Auberts called a DCFS toll-free telephone number in September 1987 to report their belief that their children had been sexually abused. Shannahan interviewed the Auberts on September 27, 1987. Two days later, the Auberts brought the three children into Shannahan's office in East Moline to speak with Ingersoll and Shannahan.

The two investigators spoke with the Auberts first. The Auberts stated there was a possibility A.A. had been sexually abused by a man named Mike and that A.A. had told them a man had placed his penis in her mouth. The Auberts told the investigators that they thought A.A. had seen pornographic movies.

Ingersoll and Shannahan testified that they then spoke to A.A. alone. They spoke to A.A. for a little while about things that she liked in order to gain her trust and get her to relax. Ingersoll then brought out anatomically correct male and female dolls. Using the dolls, Ingersoll asked A.A. to identify various parts of the male and female anatomy. According to Shannahan, she identified the vagina as the "private area," but Ingersoll stated A.A. identified it as the vagina. A.A. identified the penis as the "private area" or "dick."

Both investigators testified that when Ingersoll asked if anyone had touched A.A.'s vaginal area, she replied that someone named Mike had done so. A.A. stated that Mike had touched her, placing his hands both under and over her clothing at various times on her back, buttocks, and her vaginal area. (Shannahan said she used the term "private area" instead of "vaginal area.") Shannahan testified that A.A. stated that Mike was a friend of Willy's. According to Shannahan, A.A. stated during this interview that Mike had not placed his

penis in her mouth. Ingersoll testified that, during the initial interview, they never asked whether Mike had done so and A.A. did not make such a statement.

After speaking to A.A., Ingersoll and Shannahan spoke to her brother and sister, conducting separate interviews with each. The investigators then brought all three children together for an interview primarily for the purpose of establishing a time frame for the incidents of sexual abuse. During this interview, A.A. stated that Mike had placed his penis in her mouth.

According to Ingersoll, A.A. stated that no one other than Mike had touched her improperly. Ingersoll recalled making such an inquiry, although it was not reflected in her report of the interviews. A.A. also told them she had not seen any pornographic movies.

After the investigators testified, the State rested. Defendant's motion for a directed verdict was denied as to the two counts involving A.A., but granted as to the counts involving A.A.'s brother and sister. The trial court admonished the jurors that several counts had been withdrawn from their consideration and they were not to concern themselves with why this had occurred. The remaining counts were count I, which charged defendant with the offense of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14) for allegedly placing his penis in A.A.'s mouth, and count IV, which, as we have noted, charged him with aggravated criminal sexual abuse.

The defense presented A.A.'s six-year-old brother, M.A., as a witness. During a pretrial hearing, the trial judge had ruled that M.A. was not competent to testify about events that happened before he was six years old. The alleged acts of sexual abuse against all three children took place before M.A. turned six. M.A. stated that two nights before he testified, he awoke in the middle of the night and played a game with his two sisters. The purpose of the game was to get his or her stories straight. During the game, each of them would relate his or her story with regard to defendant's alleged sexual abuse. If they made two mistakes, they would have to start over. When A.A. testified earlier, she denied playing this game.

Over a defense objection, the prosecuting attorney asked M.A. if the game was one in which the children were making things up, and M.A. responded, "No." The prosecutor then asked if the game was about something that happened to M.A., and he said, "Yes."

A.A.'s mother, Andrea Stawicki, testified that she broke her back in a July 1987 accident and was unable to care for her three children. Her former husband, Mike Aubert, and his wife, Cindy, who lived in Moline, agreed to take care of the children while Andrea was recuper-

ating. Early September 1987, Andrea went to Moline to retrieve the children, but the Auberts would not allow them to leave. Andrea was able to pick up the children later, however, and A.A. was in her custody at the time of trial.

Andrea testified that on March 3, 1987, she had a conversation with her three children and her sister, Dana. During this conversation, A.A. told Andrea that defendant had touched her in ways she did not think were right. Andrea stated that she reported this to the Westmont police.

The jury was unable to reach a verdict on the aggravated criminal sexual assault count, and the court declared a mistrial as to that count. The jury found defendant guilty of aggravated criminal sexual abuse with regard to A.A. The trial court subsequently sentenced defendant to a three-year term of imprisonment, and he now appeals.

Defendant argues that certain instructions given by the trial court would have enabled the jury to convict him of aggravated criminal sexual abuse on the basis of conduct not charged in the indictment, which alleged that he committed the above offense in that he "knowingly touched the vaginal area of [A.A.] for the purpose of the sexual arousal of defendant." Defendant complains of the following three instructions:

"A person commits the offense of aggravated criminal sexual abuse when he was 17 years of age or older and commits an act of sexual conduct with a victim who was under 13 years of age when the act was committed." See Illinois Pattern Jury Instructions, Criminal, No. 11.38 (2d ed. Supp. 1989) (hereinafter IPI Criminal 2d (Supp. 1989)).

"The term 'sexual conduct' means any intentional or knowing touching or fondling by the accused either directly or through the clothing of any part of the body of a child under 13 years of age for the purpose of sexual gratification or arousal of the victim or the accused." See IPI Criminal 2d No. 11.64 (Supp. 1989).

"To sustain the charge of aggravated criminal sexual abuse, the State must prove the following propositions:

First: That the defendant committed an act of sexual conduct with [A.A.], and

Second: That the defendant was 17 years of age or older; and

Third: That [A.A.] was under 13 years of age when the act was committed.

If you find from your consideration of all the evidence that

each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty." See IPI Criminal 2d No. 11.40 (Supp. 1989).

Defendant objected to the latter two instructions on the basis that they did not include the specific conduct with which he was charged, touching the vaginal area of A.A. The trial court gave the instructions over defendant's objections.

Defendant also contends that the evidence presented was insufficient to support his conviction beyond a reasonable doubt because there was no evidence that he touched A.A.'s vaginal area, the only specific act alleged in the indictment. We shall consider defendant's instructional argument and the above reasonable doubt argument together.

In *People v. Thingvold* (1978), 66 Ill. App. 3d 1002, the information charged defendant with committing the offense of indecent liberties with a child in that he "lewdly fondled or touched the private parts of the victim." (*Thingvold*, 66 Ill. App. 3d at 1004.) Defendant argued on appeal that his conviction should be reversed because there was no evidence that he lewdly fondled or touched the victim's private parts as alleged in the information.

Defendant contends that the above argument was rejected in *Thingvold* because there was evidence that the defendant in that case did touch the victim's private parts. We disagree. This court stated as follows in rejecting the above argument in *Thingvold*:

"While defendant's statement related only to the act of kissing between the victim and the defendant, both occurrence witnesses testified that while the victim lay sideways across defendant's lap, defendant's left arm was moving in a rapid rubbing or punching motion. Further, Mrs. Simms testified that the rubbing occurred on the victim's dress, below her waist and above her knees. Neither contact with a sex part nor actual physical injury to the child is essential to support a charge under the statute." 66 Ill. App. 3d at 1004-05.

The court's summary of the evidence in *Thingvold* reveals there was no specific testimony that the defendant touched the victim's private parts. The last sentence in the above quotation would have hardly been necessary had there been such evidence. Instead, we believe the conclusion that there was no fatal variance between the information and the facts proved at trial is implicit in *Thingvold*. A var-

iance between the facts alleged in the charging instrument and the proof at trial is not fatal if the facts in question are not essential elements of the offense charged. (*People v. Thomas* (1990), 137 Ill. 2d 500, 522.) As this court stated in *Thingvold*, contact with the victim's private parts was not essential to support a charge of indecent liberties with a child (*Thingvold*, 66 Ill. App. 3d 1002); therefore, the phrase "the private parts" in the *Thingvold* information was mere surplusage which could have been disregarded. (See *Thomas*, 137 Ill. 2d at 522.) Therefore, even though there was no evidence in *Thingvold* specifically establishing that the defendant touched the victim's private parts, the testimony that he kissed and rubbed the victim was sufficient to support his conviction beyond a reasonable doubt.

■ The case at bar is quite similar to *Thingvold*, and that decision is controlling here. In so holding, we first note that count IV of the indictment charged defendant with committing the offense of aggravated criminal abuse by committing an act of sexual conduct with a victim who was under 13 years of age, while defendant was 17 years of age or older (see Ill. Rev. Stat. 1989, ch. 38, par. 12—16(c)(1)(i)). Since "sexual conduct" is defined, in part, as the intentional or knowing touching or fondling of any part of the body of a child under 13 years of age for the purpose of sexual gratification or arousal of the accused or the victim (Ill. Rev. Stat. 1989, ch. 38, par. 12—12(e)), it was not necessary to allege in the charging instrument in this case that defendant touched a specific part of the victim's body. Because the allegation that defendant touched A.A. "in the vaginal area" was not an essential element of the charged offense, the words, "in the vaginal area," can be disregarded as mere surplusage. (See *Thomas*, 137 Ill. 2d 522.) Accordingly, under *Thingvold*, evidence that defendant touched any part of A.A.'s body for purposes of his sexual gratification or arousal would have been sufficient to support his conviction. Defendant's argument that his conviction should be reversed because there was no evidence he touched A.A.'s vaginal area must, therefore, be rejected.

The *Thomas* case, recently decided by our supreme court, provides further support for our conclusion. In *Thomas*, count IX of the indictment charged the defendant with committing the offense of aggravated arson in that he damaged a certain building by means of fire "knowing that Sophie Dudek was present therein, in violation of Illinois Revised Statutes 1985, ch. 38, par. 20—11." Defendant argued that the trial court erred by allowing the introduction of evidence that defendant should have been aware that an elderly couple named the

Smialeks was present in the building at the time of the fire because the indictment stated only that defendant knew Sophie Dudek was present. In rejecting this argument, our supreme court noted that the indictment charged defendant generally with violating the aggravated arson statute, and the court further stated as follows:

"The fact that the indictment alleged that defendant knew that Sophie Dudek was present therein did not preclude evidence that defendant had the same mental state as to others. The identity of the person known to be in the garage is not a material element of the offense and the allegation may be considered surplusage." *Thomas,* 137 Ill. 2d at 522.

The court went on to conclude in *Thomas* that evidence the defendant should have known the Smialeks were present was admissible and relevant in determining whether he had the requisite mental state for the offense of aggravated arson. (*Thomas,* 137 Ill. 2d at 522-23.) Similarly, in the case at bar, evidence that defendant touched A.A. in areas other than her vaginal area was admissible, and the jury could have properly found him guilty even if there was no evidence of touching the vaginal area. Defendant's argument that the evidence was insufficient to support his conviction because of the alleged lack of such evidence must therefore fail, as must his assertion that the jury should have been instructed that he could only be convicted if the jury determined that he touched A.A.'s vaginal area.

■ Defendant contends that such a result would have the practical effect of sanctioning improper amendments to indictments. We disagree and note that the *Thomas* case also involved a grand jury indictment. Therefore, it is apparent that disregarding surplusage in a grand jury indictment, as the court did in *Thomas* and as we do here, does not constitute the improper amendment of an indictment.

■ Because the trial court's instructions would have permitted the jury to convict defendant absent any evidence of a touching in the vaginal area, we have assumed, *arguendo,* up until this point that there was no such evidence. We feel compelled to point out, however, that A.A. stated twice during her testimony that defendant had touched "between her legs," which was testimony establishing touching in the vaginal area. Furthermore, when A.A. was asked to point out on an anatomically correct doll the areas defendant had touched, she pointed to the inside of the doll's upper left leg, an area in close proximity to the vagina. Defendant's argument that there was no evidence he touched A.A.'s vaginal area is without merit.

■ Defendant also argues that the evidence was insufficient to support his conviction of aggravated criminal sexual abuse because

A.A.'s testimony was not clear and convincing, and it was not corroborated by other evidence. Ordinarily, when a reviewing court is faced with a challenge to the sufficiency of the evidence, the determinative question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) A conviction of aggravated criminal sexual abuse will be upheld if the testimony of the complaining witness is clear and convincing or the testimony is corroborated by some other evidence, fact, or circumstance of the case. (*People v. Thompson* (1990), 198 Ill. App. 3d 417, 419; *People v. Daniels* (1987), 164 Ill. App. 3d 1055, 1073.) The testimony of the complaining witness need not be uncontradicted, unimpeached, crystal clear, or perfect in order to be considered clear and convincing. (*Daniels*, 164 Ill. App. 3d at 1078.) Inconsistencies or shortcomings in the victim's testimony will ordinarily present a question of credibility for the trier of fact to resolve. (*Thompson*, 198 Ill. App. 3d at 419.) A reviewing court will not reverse a conviction of aggravated criminal sexual abuse unless the evidence is so improbable or unsatisfactory that a reasonable doubt of defendant's guilt exists. 198 Ill. App. 3d at 419; *People v. Server* (1986), 148 Ill. App. 3d 888, 895.

A complainant's testimony will be considered clear and convincing if it is consistent and any discrepancies do not detract from its reasonableness. (*People v. Findlay* (1988), 177 Ill. App. 3d 903, 911; *People v. Escobedo* (1986), 151 Ill. App. 3d 69, 81-82.) In *Findlay*, the complaining witness presented testimony concerning six incidents of alleged sexual abuse by defendant. Defendant only faced charges relating to three of these incidents. Defendant presented evidence impeaching and discrediting complainant's story with regard to four of the six incidents. As a result, the trial court found defendant not guilty of two of the three counts. The court also found the complainant's testimony as to one of the alleged incidents clear and convincing and therefore found defendant guilty of one count of aggravated criminal sexual abuse. *Findlay*, 177 Ill. App. 3d at 907-10.

This court reversed in *Findlay*, determining that the impeachment and discrediting of complainant's testimony regarding four of the purported incidents of sexual abuse "seriously and substantially" detracted from complainant's story as a whole. (177 Ill. App. 3d at 912.) Additionally, this court noted there was testimony impeaching and discrediting complainant's testimony as to the count of which defendant was found guilty. (177 Ill. App. 3d at 913.) We therefore de-

termined that complainant's testimony was not clear and convincing. 177 Ill. App. 3d at 913.

A.A.'s testimony concerning the aggravated sexual abuse charge was consistent. She testified that on several occasions defendant went into the bedroom she shared with her brother and sister, ostensibly to read a bedtime story. On these occasions, defendant rubbed her back and buttocks and also rubbed between her legs. The two investigators testified that A.A. gave them the above version of what had happened to her. Furthermore, A.A.'s mother, Andrea Stawicki, testified that on March 3, 1987, A.A. reported to her that defendant was touching A.A. in improper ways.

The instant case is somewhat analogous to *Findlay* because, in both cases, the complainant's testimony concerning an alleged offense of which defendant was not convicted was impeached. In the present case, A.A.'s testimony that defendant placed his penis in her mouth was impeached by her admission that she did not remember defendant doing this and by her failure to mention it during her initial interview with the investigators on September 29, 1987.

In *Findlay*, however, the pervasiveness of the impeachment of complainant's testimony concerning four of the six alleged incidents of sexual abuse was so substantial as to completely destroy her credibility as a witness. (See *Findlay*, 177 Ill. App. 3d at 912.) The same is not true here. While A.A. did not mention during the initial interview with the investigators or the March 3, 1987, discussion with her mother that defendant had placed his penis in her mouth, the failure of a young sexual assault victim to make a prompt complaint is easily understandable because of the natural sense of shame, fear, revulsion, and embarrassment felt by children under such circumstances. (*People v. Lybarger* (1990), 198 Ill. App. 3d 700, 702.) This could also explain A.A.'s testimony that she did not remember defendant's penis in her mouth and that she forgot about this.

■ Therefore, even though A.A.'s testimony about the aggravated criminal sexual assault charge was impeached, her testimony relating to this charge was not entirely discredited, as was the complainant's testimony relating to four purported incidents of sexual abuse in *Findlay*. We therefore conclude that A.A.'s inconsistent statements and testimony regarding whether defendant placed his penis in her mouth did not seriously and substantially detract from her story as a whole as did the problems with complainant's testimony in *Findlay*. The questions about A.A.'s credibility raised as a result of these inconsistent statements were a matter for the jury to resolve; A.A.'s testimony regarding the touching incidents was not discredited

by those inconsistencies to the extent it must be disregarded as a matter of law.

Defendant also points to other evidence tending to discredit A.A.'s testimony in support of his argument that her testimony was not clear and convincing. We believe that any shortcomings in A.A.'s testimony pointed out by this evidence presented credibility questions for the jury to resolve; they did not completely discredit her testimony as a matter of law. A.A. stated on cross-examination that a portion of her testimony was based upon what others told her had happened. The only specific part of her testimony that A.A. stated she did not remember occurring, however, was defendant placing his penis in her mouth. As we have previously stated, it is quite possible that A.A.'s sense of embarrassment and revulsion explains why she forgot about this alleged incident. Moreover, the testimony of Andrea Stawicki and the two investigators concerning A.A.'s corroborative complaints contains no indication that they coerced A.A. into saying defendant had touched her in improper ways. While defendant also points to the testimony of A.A.'s younger brother, M.A., that the three children played a game shortly before trial in order to rehearse their testimony, A.A. denied taking part in such a game. Furthermore, according to M.A.'s testimony, the participants in the game were not fabricating the stories they told.

Defendant also points to inconsistencies between the testimony of A.A. and Andrea Stawicki. One of these is that Andrea testified A.A. had seen a movie on child sexual abuse while A.A. denied this. Defendant also emphasizes her testimony that she did not leave defendant alone with her children. Andrea did testify, however, about one incident in which defendant was alone with the children in their bedroom. Additionally, it is apparent that when A.A. told Andrea that defendant had touched her improperly, Andrea believed her, since she reported the allegation to the Westmont police. Andrea's testimony did not discredit A.A.'s to the extent that A.A.'s testimony had to be disregarded as a matter of law.

■ We have considered other alleged shortcomings in A.A.'s testimony cited by defendant and conclude that these too presented credibility questions to be resolved by the jury. A.A. consistently maintained in her testimony and her conversations with the two investigators that defendant on several occasions went into the children's bedroom, would sometimes read them bedtime stories, and ended up rubbing her back, buttocks, and between her legs. A.A. told her mother that defendant touched her in ways that were not right. Her testimony was clear and convincing. While there were shortcom-

ings in her testimony to be considered by the jury, these shortcomings did not render her testimony unreasonable or improbable as was the case in *Findlay*. The evidence was sufficient to support defendant's conviction beyond a reasonable doubt.

Defendant next contends that Officer Shannahan and Investigator Ingersoll were permitted to provide excessive detail in their testimony concerning A.A.'s corroborative complaints, including details concerning the identity of the assailant and the areas of A.A.'s body that he touched. At the time of the alleged offenses, section 115—10 of the Code of Criminal Procedure of 1963 stated as follows:

"In a prosecution for a sexual act perpetrated upon a child under the age of 13 ***, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child that he or she complained of such act to another; and

(2) testimony by the person to whom the child complained that such complaint was made in order to corroborate the child's testimony." (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.)

Under this version of section 115—10, admission of testimony containing details of a corroborative complaint, including the identity of the perpetrator, other than those necessary to identify the incident as the one before the court was error. *People v. Baggett* (1989), 185 Ill. App. 3d 1007, 1017.

Section 115—10 was amended effective January 1, 1988. The statute now reads, in part, as follows:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13 ***, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out of court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." Ill. Rev. Stat. 1989, ch. 38, par. 115—10.

It is clear from the record that the trial judge applied the newer version of the statute, since a hearing outside the jury's presence was held to determine the reliability of Shannahan's and Ingersoll's hearsay testimony, a procedure not required under the former version of the statute. Defendant argues that the trial court erred by applying the more recent version of the statute because that version was not in effect at the time of the alleged offenses. Defendant further maintains that under the earlier version of the statute, the testimony of Shannahan and Ingersoll that A.A. told them she had been touched in certain areas of her body, including the vagina, and that this had been done by a man named Mike was improper.

■ Defendant failed to present these arguments at trial or in his post-trial motion. Ordinarily, such failures result in a waiver of the issue on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 187.) Defendant argues, however, that this issue should be reviewed under the plain-error doctrine (107 Ill. 2d R. 615(a)). The purpose of the plain-error rule is to correct serious errors which may have denied the accused a fair trial. (*People v. Sommerville* (1990), 193 Ill. App. 3d 161, 171.) The doctrine will be applied in criminal cases if the evidence was closely balanced or the alleged error was so serious that it deprived defendant of a fair trial. *Sommerville,* 193 Ill. App. 3d at 171.

■ Although we have concluded that A.A.'s testimony was clear and convincing with regard to the aggravated criminal sexual abuse allegation, the primary source of corroboration for her testimony came from Shannahan's and Ingersoll's testimony concerning her corroborative complaint. There was no physical or medical evidence that A.A. had been sexually abused, let alone that defendant was the source of the abuse. Under these circumstances, if the hearsay testimony of the two investigators was improperly admitted, this would have denied defendant a fair trial. The plain-error rule is therefore applicable.

In *People v. Morton* (1989), 188 Ill. App. 3d 95, as in the present case, the alleged sexual offenses against a child took place prior to January 1, 1988, the effective date of the most recent version of section 115—10, but defendant's trial took place after that date. The court concluded that since section 115—10 concerns trial procedures rather than substantive matters, the more recent version of the statute applied at trial. *Morton,* 188 Ill. App. 3d at 102.

■ ■ We agree with the conclusion of the court in *Morton* on

this issue. Defendant correctly points out that a law is *ex post facto* if it makes criminal an act that was not criminal at the time it was done, increases the punishment for an offense previously committed, or alters the legal rules of evidence to make a conviction easier. (*People v. Shumpert* (1989), 126 Ill. 2d 344, 351.) We disagree, however, with defendant's contention that the newest version of section 115—10 makes conviction easier. Although the former version of section 115—10 did not allow as much testimony concerning the specific details of a corroborative complaint as the present version permits, testimony that a corroborative complaint had been made was always admissible if the child testified. This is no longer the case. Such testimony is now admissible only if the trial court determines in a hearing outside the jury's presence that sufficient safeguards of reliability exist. (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(b)(1).) Therefore, the more recent version does not necessarily make convictions easier; in some instances it makes it more difficult to obtain a conviction by excluding evidence of corroborative complaints that would have been admissible under the prior version of section 115—10. Accordingly, we are satisfied that applying the existing version of section 115—10 to trials in which the alleged offenses took place prior to January 1, 1988, does not violate the constitutional prohibitions against *ex post facto* laws. The trial court acted properly in applying the existing version of section 115—10 in this case.

Defendant also contends that even if the existing version of section 115—10 was applicable, the two investigators should not have been able to testify that A.A. identified her assailant as a man named Mike because the statute does not specifically allow hearsay testimony about the identity of the alleged offender. In *Morton*, the court rejected a similar argument, noting that section 115—10(a)(2) provides for the admissibility of "testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense." (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(a)(2); *Morton*, 188 Ill. App. 3d at 102-03.) The court stated, "Clearly, an identification of the perpetrator of an 'act' is a 'detail pertaining' to that act." (188 Ill. App. 3d at 103.) We agree and reject defendant's contention to the contrary.

Defendant also contends that, assuming the applicability of the most recent version of the statute, the investigators should not have been permitted to testify that A.A. told them defendant had touched her vagina because A.A. did not testify at trial that defendant had done this. Defendant maintains that this violates his sixth amendment confrontation right because his conviction could have been

based solely upon the investigators' hearsay testimony. Since, as we have previously indicated, A.A. testified that defendant touched her between her legs, the testimony of the investigators was not the sole evidence that defendant touched A.A.'s vaginal area. We therefore reject defendant's argument.

Defendant next argues that the trial court's order directing that the trial be closed to nonmedia spectators during A.A.'s testimony violated his sixth amendment right to a public trial. The trial judge issued this order pursuant to section 115—11 of the Code, which states that in a criminal prosecution for certain sexual offenses

> "where the alleged victim of the offense is a minor under 18 years of age, the court may exclude from the proceedings while the victim is testifying, all persons, who, in the opinion of the court, do not have a direct interest in the case, except the media." Ill. Rev. Stat. 1987, ch. 38, par. 115—11.

■■■ The United States Supreme Court has recognized that criminal defendants have a qualified right to a public trial under the sixth amendment. (*Waller v. Georgia* (1984), 467 U.S. 39, 46, 81 L. Ed. 2d 31, 38, 104 S. Ct. 2210, 2215.) While the right to an open trial may give way in certain instances to other rights and interests, such circumstances are rare, and the balance of interests must be struck with great care. (*Waller*, 467 U.S. at 45, 81 L. Ed. 2d at 38, 104 S. Ct. at 2215.) Closure of a trial or portion thereof is only justified if the party seeking to close the hearing advances an overriding interest that is likely to be prejudiced, the closure is not broader than necessary to protect said interest, the trial court considers reasonable alternatives to closing the proceeding, and the trial court makes findings which are adequate to support closure. 467 U.S. at 48, 81 L. Ed. 2d at 39, 104 S. Ct. at 2216.

It is apparent that the *Waller* criteria were not met in this case. The trial court made no findings in support of closure, and the record contains no indication that the trial judge considered alternatives to closing the proceeding during A.A.'s testimony. Defendant, however, did not object to the order closing the trial to nonmedia spectators during the testimony of A.A., her sister, and brother, nor did he raise this issue in his post-trial motion. As we have pointed out, this ordinarily results in waiver of the issue on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 187.) Citing *People v. Bryant* (1989), 128 Ill. 2d 448, defendant argues that this issue is not waived.

■■■ In *Bryant*, our supreme court stated that "a constitutional challenge to a statute can be raised at any time," including for the first time on appeal. (*Bryant*, 128 Ill. 2d at 454.) Thus, to the extent

defendant is challenging the constitutionality of section 115—11, his argument is not waived, and we shall consider whether this statute violates the sixth amendment right of criminal defendants to public trials.

As we have seen, section 115—11 states that trial judges *may* close the portion of a criminal trial for certain sexual offenses in which a victim under 18 is testifying; it does not require closure under such circumstances. Statutes are presumed to be constitutional and, if possible, will be interpreted so as to avoid an unconstitutional construction. (*People v. Orth* (1988), 124 Ill. 2d 326, 334; *People v. Geever* (1988), 122 Ill. 2d 313, 324.) Therefore, we interpret section 115—11 as allowing a trial judge to exercise his or her discretion in favor of closing a trial for the sexual offenses set forth therein while a victim under 18 years of age testifies only if the *Waller* criteria are satisfied. In the context of section 115—11, this would mean the State must advance an overriding interest that is likely to be prejudiced if the trial is not closed to nonmedia spectators during the victim's testimony; there must be no less restrictive measure which will eliminate the prejudice; the trial court must consider reasonable alternatives to closure; and the court must make findings adequate to justify the closure. (See *Waller*, 467 U.S. at 48, 81 L. Ed. 2d at 39, 104 S. Ct. at 2216.) Section 115—11, as we have construed it, satisfies the sixth amendment concerns expressed in *Waller*. Since there is a reasonable construction of that provision which does not offend the constitution, section 115—11 is constitutional (see *People v. Geever* (1988), 122 Ill. 2d 313, 324), and we reject defendant's challenge to that statute.

Since the trial judge did not comply with the *Waller* criteria, as we have previously indicated, in closing the trial to nonmedia spectators during A.A.'s testimony, the judge also failed to comply with section 115—11 as we have interpreted it. Defendant waived this issue for purposes of appeal by failing to object at trial or in his posttrial motion. We decline to apply the plain-error rule in this case. The rule is only applied if the evidence at trial was closely balanced or the error was so serious that it deprived defendant of a fair trial. *People v. McManus* (1990), 197 Ill. App. 3d 1085, 1099.

Here, the evidence was not closely balanced; A.A.'s testimony that defendant touched her buttocks, back, and between her legs on several occasions was unrebutted. That testimony was corroborated by the investigators' testimony that A.A. related this version of events to them on September 29, 1987, and Andrea Stawicki's testimony that A.A. stated on March 3, 1987, that defendant had touched her in improper ways.

Furthermore, this error did not deprive defendant of a fair trial. The purposes served by requiring public trials are encouraging witnesses to come forward, discouraging perjury, and helping to ensure that the judge and prosecutor carry out their duties in a responsible manner. (*Waller*, 467 U.S. at 46, 81 L. Ed. 2d at 38, 104 S. Ct. at 2215.) Since most of the trial was open to the public and the media was not excluded from any portion of the trial, we do not believe these objectives were seriously compromised by the trial court's action. Accordingly, we decline to apply the plain-error rule here.

■■ Defendant next argues that reversal is required because the jurors, while outside the courtroom, witnessed an emotional reunion between A.A.'s younger sister, M.A., and her father, and the trial court refused to grant a mistrial on this basis. A mistrial is not required if the jury is present during a genuine emotional outburst by a witness inside the courtroom. (*People v. Sambo* (1990), 197 Ill. App. 3d 574, 583-84.) The decision whether to order a mistrial under such circumstances is within the trial court's discretion. (*Sambo*, 197 Ill. App. 3d at 584.) We can discern no reason why these principles should not also apply to the present situation, in which the jurors were present when such an outburst occurred outside the courtroom. Furthermore, the trial judge instructed the jurors to disregard anything that took place outside the courtroom. The motion for a mistrial was properly denied.

Defendant also contends that after his motion for a directed verdict was granted as to three counts involving A.A.'s brother and sister and the State nol-prossed another count, the jury should have been told by the trial court that defendant had been acquitted on three counts and the State had nol-prossed another. Instead, the trial court admonished the jurors that these four counts, all of which involved alleged abuse of A.A.'s brother and sister, had been withdrawn from their consideration and they were not to be concerned with why this had occurred. The court also told the jurors that they should consider the two remaining charges independently as though no other charges had been brought.

■■ Since defendant did not object to the above admonition or raise this issue in a post-trial motion, he has waived it for purposes of review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 187.) As we have already indicated, the evidence in this case was not closely balanced. Since we do not believe the alleged error deprived defendant of a fair trial, we decline to apply the plain-error rule.

In so holding, we are cognizant that the court chose to apply the plain-error rule to a similar contention in *People v. Flynn* (1988), 172

Ill. App. 3d 318. In *Flynn,* the State nol-prossed one of the five charges against defendant during the trial. During its deliberations, the jury inquired of the court as to why there were now only four counts pending. The trial judge responded that this was a legal matter and the jurors should deliberate on the four counts before them. (*Flynn,* 172 Ill. App. 3d at 323.) On appeal, the court considered this matter under the plain-error doctrine and held that the trial court's failure to respond to this and one other jury question constituted reversible error. (172 Ill. App. 3d at 323-24.) The court noted possible prejudice in that the jury could have inferred that defendant pleaded guilty to the missing charge or the trial court displayed leniency. 172 Ill. App. 3d at 324.

In the case at bar, unlike *Flynn,* such jury confusion was highly unlikely. The jurors made no inquiry about why the four charges were dropped, unlike *Flynn.* Additionally, it should have been apparent to the jurors that no evidence was presented relating to the charges that defendant sexually abused and assaulted A.A.'s younger brother and sister and that this was why those charges were no longer pending. Even if there was error in this context, it would not have deprived defendant of a fair trial. Since we have already determined the evidence in this case was not closely balanced, we decline to review this argument under the plain-error rule.

Defendant has also waived his argument that the prosecutor asked improper questions of A.A.'s brother on cross-examination by failing to raise this issue in his post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 187.) Defendant asserts that the questions were improper because they elicited responses that the game the children had played two nights before trial in which they related their stories of sexual abuse was about something that had actually happened to them, and the children were not making things up. A.A.'s brother had been found incompetent to testify about anything that occurred before he was six years old, and the alleged sexual abuse against the three children in this case all took place before he turned six. A.A.'s brother, however, only testified on cross-examination that the game was about something which actually happened; he did not go on and relate the stories of sexual abuse that were told during the game. Accordingly, we believe there was no error here, and even if there was, it would not have deprived defendant of a fair trial. We therefore decline to invoke the plain-error rule.

Defendant next argues that the trial court erred by ordering him to reimburse Du Page County in the amount of $2,250 for the services of the public defender pursuant to section 113—3.1 of the Code

(Ill. Rev. Stat. 1983, ch. 38, par. 113—3.1). Defendant maintains this was error because the record showed he had no current or foreseeable ability to pay this amount. In *People v. Hammer* (1983), 121 Ill. App. 3d 133, the court deemed a similar argument waived when defendant failed to object to the reimbursement order at trial. (*Hammer*, 121 Ill. App. 3d at 138.) In the instant case, defendant not only failed to object, he actually consented to reimburse the county in the amount of $2,225. Defendant has therefore waived this issue for review. Since it is clear from the record that defendant and the State agreed to the entry of a reimbursement order in the amount of $2,225, and the trial judge intended to enter this order in conformance with the parties' agreement, we will modify the amount in the reimbursement order from $2,250 to $2,225.

■ Defendant's final contention is that the trial court order instructing the clerk of the court to send a copy of defendant's conviction to the Secretary of State's office pursuant to section 6—205(b)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 6—205(b)(2)) should be reversed because that provision, which requires the Secretary of State to revoke the driver's license of any person convicted of aggravated criminal sexual abuse and certain other sex offenses, was held unconstitutional in *People v. Lindner* (1989), 127 Ill. 2d 174, 183. The State argues this is not necessary because the trial court did not actually order revocation; it only ordered that the conviction be reported to the Secretary of State. Section 6—205(b)(2) did not give the Secretary of State's office any discretion, however; once the office was notified of an aggravated criminal sexual abuse, it was required to revoke the offender's license. Thus, we construe the trial court's order as an order to revoke defendant's driver's license, which must be reversed under *Lindner*.

In sum, defendant's conviction is affirmed. The order directing defendant to reimburse the county in the amount of $2,250 for the public defender's services is modified, with the amount changed to $2,225, and the order that the conviction be reported to the Secretary of State's office so his driver's license will be revoked is reversed.

*Affirmed in part; modified in part; and reversed in part.*

UNVERZAGT, P.J., and GEIGER, J., concur.