THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS WALTER McGEE, Defendant-Appellant.

Third District    No. 3—95—0810

Opinion filed May 2, 1997.

Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Terry

A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOMER delivered the opinion of the court:

The defendant, Thomas Walter McGee, was convicted of aggravated discharge of a firearm (720 ILCS 5/24—1.2 (West 1994)) and sentenced to six years in prison. On appeal, he claims that the prosecutor made improper comments during closing arguments and that the trial court considered an improper factor in aggravation in determining his sentence. We affirm.

## FACTS

Some of the facts surrounding the offense are not in dispute. The defendant, his girlfriend and their 10-month-old child went to the home of Taronn Bell in an attempt to obtain money from Bell to pay for repairing his girlfriend's car, which had been damaged by Bell's nephew. The defendant approached Bell's home. After speaking to someone, he got into his car and began to leave. After the defendant backed out of Bell's driveway, he stopped the car on the street. The defendant then got out of the vehicle and fired a gun several times over the roof of the car before returning to the car and driving away.

Details of the defendant's encounter with Bell differ among the various witness accounts. Bell testified that he was upstairs in his home when a man came to the door. Bell's wife spoke to the man, and Bell came down the stairs just as the conversation was ending. Bell stated that he went outside and was on the porch when the man was getting into his car. The man backed his car out of the driveway and stopped on the street in front of Bell's house. Then Bell heard shots, so he ran. Bell testified that he would not recognize the shooter because he did not see the shooter's face.

Bell's wife testified that the defendant came to the door of her home, identified himself as a gang member, flashed a gun, and demanded payment for the damage done to his girlfriend's car by Bell's nephew. She stated that she told the defendant that she and her husband were not responsible for the damage. Her conversation with the defendant lasted approximately 10 minutes. At the end of that time, Bell came to the door and spoke with the defendant. According to Bell's wife, the defendant stopped his car on the street and then fired a gun at least four times in her direction and that of Bell and their three children. She admitted that she had a criminal history arising out of her having previously given a false name to the police.

One of Bell's neighbors testified that he was at home when he heard gunshots from outside. He went to his front door and saw a

man standing with his arm extended over the roof of a car firing a gun between the buildings across the street. He heard a few shots, then a pause and then more shots. All the shots sounded the same. The neighbor observed three small children playing in the area toward which the shooter was firing, so he called the police. After placing the phone call, the neighbor went back to his door and saw that the man was still there and was still firing his gun over the roof of his car. Shortly thereafter, the man drove away. The neighbor then saw two men come out of the building across the street. Each man carried a gun, but the neighbor did not see either of them fire his weapon. Following the shooting, the neighbor went into the street and retrieved 15 shell casings, which he gave to the police.

The defendant's girlfriend testified that she was with the defendant when he went to Bell's home to obtain money from Bell to repair the damage to her car that had been caused by Bell's nephew. According to the defendant's girlfriend, as the defendant approached Bell's home, Bell's wife answered the door. A man appeared at an upstairs window, and he and the defendant proceeded to have a conversation. The defendant returned to his vehicle, and the man from the window came out of the home brandishing a gun. This man fired several shots at the defendant's car, which prompted the defendant to retrieve a gun from under the seat and return the gunfire. Then the defendant drove away. The defendant's girlfriend further testified that there were bullet holes in her car as a result of the shots fired from the other man. An investigating police officer confirmed the existence of bullet holes in the vehicle on the date of the occurrence. However, he could not determine whether the holes had been made that day, and he testified that the defendant's girlfriend refused to allow the police to examine the holes further to determine whether they were fresh.

The defendant testified that when he approached Bell's home, Bell spoke to him from an upstairs window. After Bell refused to pay for the damage to the car, the defendant got into his car to leave. As he was leaving, Bell came out of the home with a gun and began to fire at the defendant. The defendant was scared and feared that his girlfriend or his child might be hurt, so he stopped the car, reached under the seat for a gun, got out of the car and fired the gun into the air. Then he drove away. The defendant testified that he could not just drive away from the scene because there was something wrong with the car and it would have stalled if he had tried to speed away.

During closing arguments, the prosecutor suggested to the jury that the testimony of witnesses provided by the State and by the defense could not be reconciled and further suggested that the jury

would have to determine which account was true. Thereafter, the prosecutor remarked at some length on the defendant's failure to leave the scene of the shooting, saying, *inter alia*: "Could the defendant have driven away? Of course. Did he? No. Why not? I suggest to you that's because his story of what happened is implausible here."

The prosecutor further commented on the criminal history of Bell's wife and suggested that the defendant and his girlfriend engaged in worse behavior because they had lied to the police and to the jury. Next, the prosecutor addressed the testimony that following the shooting there were bullet holes in the car used by the defendant. He noted that there was no objective or scientific evidence that the bullet holes were fresh. He reminded the jury that the defendant's girlfriend had not allowed the police to determine the age of the holes.

The prosecutor also noted that the defendant had not produced Bell's nephew, who occasionally resided with the defendant, as a witness to verify any portion of the defendant's story. The defendant objected, and the trial court instructed the jury to disregard the prosecutor's remark. Finally, the prosecutor stated that the defendant had fired his weapon in the direction of Bell and Bell's wife and children.

The jury returned a verdict of guilty. At the sentencing hearing, the trial judge remarked that he had considered all the statutory factors in aggravation and mitigation. He found in mitigation that the defendant did not have a history of prior criminal activity. In aggravation, he found that the defendant's acts threatened serious physical harm to other persons. The court sentenced the defendant to six years' imprisonment.

## PROSECUTOR'S CLOSING ARGUMENT

In his post-trial motion, the defendant claimed that he had been prejudiced by the prosecutor's closing argument but specifically noted only the prosecutor's comment regarding the defendant's failure to call Bell's nephew as a witness.

On appeal, the defendant points to five examples of how he was denied a fair trial by the prosecutor's closing argument: (1) the prosecutor improperly implied that the defendant had a duty to retreat, contrary to established law, thereby diminishing his claim of self-defense; (2) the prosecutor improperly impugned the credibility of the defendant and his girlfriend by stating they had given false stories to the police and the jury, equating their conduct with that of Bell's wife, who had been previously convicted of giving a false name to a police officer; (3) the prosecutor improperly expanded the nature

of the charge, thereby diminishing the burden of proof by arguing that the defendant had fired in the direction of Bell, his wife and his children when the defendant had only been charged with firing his weapon in Bell's direction; (4) the prosecutor improperly commented upon the defendant's failure to present expert testimony to prove the bullet holes in the defendant's car were fresh; and (5) the prosecutor improperly commented upon the defendant's failure to call Bell's nephew as a witness.

■ We find that the defendant has waived any alleged error with regard to the first four examples by failing to object at trial or to raise these issues in his post-trial motion. See *People v. Burrows*, 148 Ill. 2d 196, 592 N.E.2d 997 (1992). Thus, we can reverse only if the prosecutor's comments amounted to plain error. *People v. Whitehead*, 116 Ill. 2d 425, 508 N.E.2d 687 (1987). Plain error is error of such magnitude that it denied the defendant a fair proceeding or error in a trial where the evidence is closely balanced. *Whitehead*, 116 Ill. 2d 425, 508 N.E.2d 687. Following our careful review of the record, we find that none of these comments by the prosecutor, taken individually or cumulatively, was of such magnitude to deny the defendant a fair trial.

■ Although a defendant has no duty to retreat when attacked with deadly force, a prosecutor may properly argue a defendant's failure to easily extricate himself from a dangerous situation as a comment on the credibility of the defendant's testimony that he was afraid and that the use of deadly force was necessary. *People v. White*, 265 Ill. App. 3d 642, 638 N.E.2d 314 (1994); *People v. Wilburn*, 263 Ill. App. 3d 170, 635 N.E.2d 877 (1994). The jury, in the case at bar, was properly instructed with regard to the issues of self-defense, and we find the prosecutor's argument about the defendant's actions to be permissible commentary on the credibility of the defense witnesses. Further, we note that the jury was properly instructed regarding the elements of the charged offense, so no prejudicial error resulted from the prosecutor's comments about the defendant shooting in the direction of Bell's wife and the children, as well as at Bell. See *People v. Hobley*, 159 Ill. 2d 272, 637 N.E.2d 992 (1994) (improper comment may be cured by providing proper instructions of law). Moreover, we do not agree that the prosecutor's comment relative to a lack of objective or scientific evidence was directed toward the defendant's failure to call an expert witness. Rather, it was a reference to the girlfriend's alleged lack of cooperation with the crime scene personnel. As such, the comment was intended to impeach the credibility of the girlfriend, which is allowable. Additionally, we do not find that the evidence in this case was closely balanced. The testimony of the

only independent eyewitness, Bell's neighbor, corroborated Bell's version of the events and that of Bell's wife. Therefore, we do not find plain error.

■ Finally, with regard to the prosecutor's comment about the defendant's failure to call Bell's nephew as a witness, we note that the trial court sustained the defendant's objection and admonished the jury to disregard the prosecutor's remark. When a defendant's objection is sustained and the jury is properly admonished, any potential error is generally deemed cured. *People v. Gonzalez*, 265 Ill. App. 3d 315, 637 N.E.2d 1135 (1994). We find that the trial court properly responded to the defendant's objection, and, thus, any error stemming from the prosecutor's remark was cured.

## SENTENCING

■ The defendant argues next that the trial court considered the threat of harm as an improper aggravating factor in determining his sentence.

Again, the defendant has waived this error by failing to object at the sentencing hearing (see *People v. Lybarger*, 198 Ill. App. 3d 700, 555 N.E.2d 1264 (1990)) and by failing to file a written motion to reduce sentence (see *People v. McCleary*, 278 Ill. App. 3d 498, 663 N.E.2d 22 (1996); *People v. Moncrief*, 276 Ill. App. 3d 533, 659 N.E.2d 106 (1995)).

Moreover, we find that any error did not amount to plain error. Plain error arises in a sentencing proceeding when the evidence is closely balanced or when the alleged error is so fundamental that it may have deprived the defendant of a fair sentencing hearing. *People v. Beals*, 162 Ill. 2d 497, 643 N.E.2d 789 (1994). The defendant stood convicted of a Class 1 felony for which he received a six-year prison sentence. We find that any consideration by the trial judge of the threat of harm posed by the defendant's conduct, beyond that implicit in the charge itself, did not result in a greater sentence than would have been imposed absent such consideration. See *People v. Ward*, 243 Ill. App. 3d 850, 611 N.E.2d 590 (1993). Therefore, we uphold the sentence imposed by the trial court.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

LYTTON, P.J., and MICHELA, J., concur.