2019 IL App (4th) 160882

NO. 4-16-0882

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 12, 2019
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| HAYZE L. SCHOONOVER, | ) | No. 15CF1388 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justice Turner concurred in the judgment and opinion.
Justice DeArmond dissented, with opinion.

**OPINION**

¶ 1       Following a jury trial in Champaign County circuit court, defendant Hayze L.

Schoonover was found guilty of three counts of predatory criminal sexual assault of a child (720

ILCS 5/11-1.40(a)(1) (West 2014)) and sentenced to two 35-year terms and one 15-year term of

imprisonment. Defendant appeals, arguing (1) the trial court violated his right to a public trial by

barring members of his family from the courtroom during the minor victim's trial testimony,

(2) his defense counsel provided ineffective assistance, and (3) the court abused its discretion

during sentencing. We reverse and remand.

¶ 2                              I. BACKGROUND

¶ 3       In September 2015, the State charged defendant with four counts of predatory

criminal sexual assault of a child. *Id.* Specifically, it alleged that defendant, who was over the age of 17, committed "act[s] of contact" with the victim, M.L., who was under the age of 13, for the purpose of defendant's sexual gratification, in that defendant touched M.L.'s vagina with his hand (count I), touched M.L.'s breasts with his hand (count II), placed his penis in M.L.'s mouth (count III), and placed his penis in M.L.'s hand (count IV).

¶ 4 In August 2016, defendant's jury trial was conducted. The State presented evidence showing M.L. was 13 years old at the time of trial. Defendant was married to M.L.'s maternal aunt. When M.L. was 12 years old, defendant began talking to her about "sex things." Eventually, defendant asked M.L. to touch him. M.L. testified defendant also asked her to take her clothes off and take pictures of her "private areas" with his phone. She further described occasions when defendant touched her vagina with his hand, "made [her] put his penis in [her] mouth," and had M.L. touch his penis with her hand. M.L. denied that defendant ever touched her breasts.

¶ 5 The record reflects that M.L. was the first witness to testify for the State. At the outset of defendant's trial, the trial court stated its intention to have the courtroom "cleared" during M.L.'s testimony. Specifically, the record reflects the following colloquy between the court and the parties:

"THE COURT: When [M.L.] testifies, I want the courtroom cleared except for family members.

MR. LARSON [(ASSISTANT STATE'S ATTORNEY)]: Thank you, Your Honor.

MR. ALLEGRETTI [(DEFENSE ATTORNEY)]: I'm sorry, Judge.

- 2 -

[Defendant's] family members are here. Is that—are you barring them?

THE COURT: Out."

¶ 6 The trial court and counsel went on to address other matters relevant to the proceedings before returning to the issue of closing the courtroom during M.L.'s testimony. The record reflects the following discussion:

"THE COURT: All right. Well pursuant to [section 115-11 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-11 (West 2014))], where the alleged victim of the offense is a minor under eighteen years of age, the court may exclude from the proceedings while the victim is testifying all persons who, in the opinion of the court, do not have a direct interest in the case except the media. So I'm going to order that the courtroom be cleared, with the exception of the media, when [M.L.] testifies. I will note [defense counsel's] objection.

MR. LARSON: Your Honor, if I may.

THE COURT: Yes.

MR. LARSON: The victim's grandmother is here and would like to remain.

THE COURT: She would be someone who is allowed to remain."

Finally, following the parties' opening statements and immediately prior to M.L. taking the stand, the following occurred outside the presence of the jury:

"THE COURT: All right. At this point pursuant to [section 115-11], I'm going to clear the courtroom.

Mr. Larson, you said the grandmother is going to be present.

- 3 -

MR. LARSON: Yes, Your Honor.

THE COURT: Who else?

MR. LARSON: Your Honor, her father and stepfather we would also ask to be present.

THE COURT: Who is in the back of the courtroom? Who is the gentleman sitting there? And then the rest of the people on this side. All right. As soon as we get done with her testimony, I will bring the rest of the people in the courtroom."

¶ 7       Ultimately, the jury found defendant guilty of three counts of predatory criminal sexual assault of a child, counts I, III, and IV. In September 2016, defendant filed a motion for a new trial. In October 2016, the court denied defendant's motion and sentenced him to two 35-year terms of imprisonment (counts I and III) and one 15-year term of imprisonment (count IV). The court also ordered that each sentence be served consecutively. The same month, defendant filed a motion to reconsider his sentence, which the court also denied.

¶ 8       This appeal followed.

¶ 9                                    II. ANALYSIS

¶ 10                              Right to a Public Trial

¶ 11      On appeal, defendant argues he was denied his constitutional right to a public trial when the trial court "cleared" the courtroom during M.L.'s testimony. He contends the court violated statutory requirements when clearing the courtroom and improperly excluded persons with a direct interest in his trial.

¶ 12                              1. *Forfeiture v. Waiver*

¶ 13    Initially, defendant acknowledges that he failed to properly preserve this issue for appellate review by failing to raise it in a posttrial motion. See *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675 (stating that, "[t]o preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion" and a defendant's "[f]ailure to do either results in forfeiture"). However, he contends that his unpreserved claim of error may be considered under the plain error doctrine. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."). A defendant's forfeiture may be excused under the plain error doctrine "when a clear or obvious error occurred" and either (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Sebby*, 2017 IL 119445, ¶ 48.

¶ 14    The State responds to defendant's request for a plain error analysis by arguing that defendant waived, rather than forfeited, his alleged claim of error and, as a result, the plain error doctrine cannot be applied. It contends that, even though an objection was noted by the trial court, defendant never actually objected to the court's closure of the courtroom. Further, it points out that defendant and his counsel remained silent when the court asked "[w]ho else" should remain in the courtroom during M.L.'s testimony. The State asserts that, due to defendant's inaction, he "acquiesced to the trial court's decision to clear the courtroom" and cannot now argue that plain error occurred.

¶ 15    "Waiver is the intentional relinquishment of a known right, whereas forfeiture is

the failure to make a timely assertion of a known right." *People v. Bowens*, 407 Ill. App. 3d 1094, 1098, 943 N.E.2d 1249, 1256 (2011). "In the course of representing their clients, trial attorneys may (1) make a tactical decision not to object to otherwise objectionable matters, which thereby waives appeal of such matters, or (2) fail to recognize the objectionable nature of the matter at issue, which results in procedural forfeiture." *Id.* A plain error analysis applies only to cases involving forfeiture and not those that involve affirmative acquiescence or waiver. *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 29, 92 N.E.3d 494. "When defense counsel affirmatively acquiesces to actions taken by the trial court, any potential claim of error on appeal is waived, and a defendant's only available challenge is to claim he received ineffective assistance of counsel." *Id.*

¶ 16        "In determining whether a legal claim has been waived, courts examine the particular facts and circumstances of the case." *People v. Phipps*, 238 Ill. 2d 54, 62, 933 N.E.2d 1186, 1191 (2010). "Waiver principles are construed liberally in favor of the defendant." *Id.*

¶ 17        To support its contention that defendant waived the courtroom closure issue, the State cites this court's decision in *People v. Dunlap*, 2013 IL App (4th) 110892, 992 N.E.2d 184. There, we held that the defendant waived, rather than forfeited, his challenge to the trial court's imposition of a $400 public defender reimbursement "because he affirmative[ly] acquiesced not only to the amount of the reimbursement, but also to the materials the court relied upon to arrive at the amount of the reimbursement." *Id.* ¶ 11. We noted that, after the court expressed its intent to impose a $400 reimbursement, it "asked whether there was 'anything [defendant] want[ed] to say [as to] whether or not [the court] should impose that [reimbursement],' " and both the defendant and his counsel "responded that they had nothing to say." *Id.* ¶ 10. Under such

circumstances, a plain error analysis did not apply. *Id.* ¶ 12.

¶ 18         We find *Dunlap* is distinguishable from the present case and disagree that defendant waived rather than forfeited his claim of error. Initially, we note that the record shows the trial court actually understood defendant as objecting to its decision to clear the courtroom during M.L.'s testimony because it explicitly "note[d] [defense counsel's] objection" for the record. However, even absent that express acknowledgment by the court we would find that the record reflects circumstances of forfeiture rather than waiver. After the court asserted its intention to close the courtroom during M.L.'s testimony, defense counsel questioned whether the court intended to bar defendant's family members, and the court responded by stating "[o]ut." Thereafter, both defendant and his counsel remained entirely silent on the issue. Neither defendant nor his counsel expressed agreement with the court's action. Moreover, unlike in *Dunlap*, neither defendant nor his counsel expressly declined to raise an objection when questioned by the court.

¶ 19         As noted, the State points out that, prior to M.L.'s testimony, the trial court asked "[w]ho else," while in the process of clearing the courtroom. Although the State suggests defendant's lack of response to this question supports a finding of acquiescence, we agree with defendant's contention that the record indicates the court's question was directed to the State rather than defendant. Notably, the question was posed while the court was conversing with the prosecutor and well after the court decided to bar defendant's family members from the courtroom and after it noted defendant's objection to that action for the record. Accordingly, we do not find defendant's silence in response to that question indicative of acquiescence. Instead, we find the particular facts and circumstances of this case are more representative of a forfeiture

of the issue rather than the making of a tactical decision not to object, *i.e.*, waiver. Thus, defendant is not precluded from arguing plain error.

¶ 20                    2. *Compliance With Section 115-11*

¶ 21            We now turn to the merits of defendant's plain error claim. As stated, forfeiture of an issue may be excused when a clear or obvious error occurred and either (1) the evidence is closely balanced or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." (Internal quotation marks omitted.). *Sebby*, 2017 IL 119445, ¶ 48. "The initial analytical step under either prong of the plain error doctrine is determining whether there was a clear or obvious error at trial." *Id.* ¶ 49. In connection with this issue, defendant alleges the occurrence of only second-prong plain error.

¶ 22            "[S]ection 115-11 of the Code permits a limited closure of a courtroom during the testimony of minors who are the victims of certain sex crimes." *People v. Williams*, 2016 IL App (3d) 130901, ¶ 19, 53 N.E.3d 1019. Specifically, that section provides as follows:

> "In a prosecution for [certain sex offenses, including predatory criminal sexual assault of a child (720 ILCS 5/11-1.40 (West 2014))], where the alleged victim of the offense is a minor under 18 years of age, the court may exclude from the proceedings while the victim is testifying, all persons, who, in the opinion of the court, do not have a direct interest in the case, except the media." 725 ILCS 5/115-11 (West 2014).

¶ 23            "[A]n exclusionary order under section 115-11 of the Code is valid if it meets the requirements of the statute," and where the statutory requirements are met, the court's order "does not need to meet the more stringent limitations established by the United States Supreme

Court for the closure of judicial proceedings to the press and public." *Williams*, 2016 IL App (3d) 130901, ¶ 20 (citing *People v. Falaster*, 173 Ill. 2d 220, 226, 670 N.E.2d 624, 627-28 (1996)). Section 115-11 has three limitations for exclusion: "(1) the [trial] court is explicitly prohibited from excluding the media; (2) persons with a direct interest in the case may not be excluded; and (3) the exclusion may occur only when the victim is testifying." *Id.* ¶ 22.

¶ 24    Under section 115-11, the trial court exercises discretion in determining whether spectators to a trial are directly interested in the case and may be excluded from the courtroom during a minor's testimony. *People v. Holveck*, 141 Ill. 2d 84, 102-03, 565 N.E.2d 919, 927 (1990). Persons with a direct interest include the defendant's immediate family members, and such individuals may not be excluded. *People v. Benson*, 251 Ill. App. 3d 144, 149, 621 N.E.2d 981, 984-85 (1993). Properly excluded individuals include "only those spectators whose connection to the case on trial is tenuous or whose presence simply reflects their curiosity about the trial court proceedings." *Id.*

¶ 25    As stated, defendant argues the trial court failed to comply with the requirements of section 115-11 when clearing the courtroom for M.L.'s testimony. In considering this issue, we first note that defendant has attempted to supplement the appellate record with the affidavit of his defense counsel by attaching the affidavit to his appellant's brief. He maintains the affidavit shows that the trial court improperly barred his immediate family members, in particular his father and stepmother, from the courtroom during M.L.'s testimony. However, "attachments to briefs cannot be used to supplement the record, and this court cannot consider evidence that is not part of the record." *People v. Garcia*, 2017 IL App (1st) 133398, ¶ 35, 74 N.E.3d 1058; see also *People v. Vega*, 145 Ill. App. 3d 996, 1001, 496 N.E.2d 501, 505 (1986) ("Exhibits or

attachments to appellate briefs, not seen by the trial court, are improper."). Defense counsel's affidavit is not part of the record on appeal, and we decline to consider it.

¶ 26 However, even absent any consideration of defense counsel's affidavit, we agree with defendant that the record shows a "clear or obvious error" occurred when, pursuant to section 115-11, the trial court *sua sponte* ordered persons excluded from the courtroom during M.L.'s testimony without first determining they "d[id] not have a direct interest in the case."

¶ 27 In *People v. Revelo*, 286 Ill. App. 3d 258, 264, 676 N.E.2d 263, 268 (1996), the State moved to exclude all persons other than the defendant, his counsel, and a victim counselor during the testimony of a minor victim. The defendant objected to the exclusion of his mother, father, and brothers on the basis that they had a direct interest in the case. *Id.* The trial court granted the State's motion over the defendant's objection but "failed to find expressly whether [the] defendant's mother, father, and brothers possessed a direct interest in the cause." *Id.* The defendant appealed, arguing he was denied his right to a public trial because the court excluded his family members from the courtroom during the minor victim's testimony. *Id.*

¶ 28 On review, the Second District found "the trial court failed to follow the requirements of section 115-11" because it "failed to make an express finding concerning the interest of [the] defendant's parents and siblings." *Id.* at 265. The court determined as follows:

"Under the facts established by this record, it would be Orwellian to describe as tenuous the connection between these parents or these siblings and the criminal trial of the defendant. We will not do so. Additionally, [the] defendant's parents and siblings were not 'simply curious' because of the nature of the criminal trial; they were present out of an interest—and likely a concern—for [the] defendant

- 10 -

that long predated the beginning of this cause. To the extent the trial court's ruling excluding [the] defendant's parents and siblings can be interpreted as an implicit finding that they did not have a direct interest in [the] defendant's trial, we hold this to be an abuse of discretion." *Id.* at 265-66.

The court went on to find that the defendant's father and at least two of his siblings could have properly been excluded because they were potential witnesses in the case; however, it noted that the same could not be said for the defendant's mother and remaining siblings. *Id.* at 266-67. The court concluded that under section 115-11, the defendant's nonwitness, immediate family members had the right to attend the minor victim's testimony. *Id.* at 267.

¶ 29 Here, the trial court decided *sua sponte* to clear the courtroom during M.L.'s testimony pursuant to section 115-11. That section clearly applied, as M.L. was the alleged victim of a listed sex offense and under the age of 18. Although the court acted properly in holding that the media was exempt from its order and limiting its closure to only the time period during which M.L. testified, the record otherwise reflects that it erred by failing to determine whether individuals it excluded from the courtroom had "a direct interest in the case." Significantly, defense counsel expressly brought the presence of defendant's "family members" to the court's attention. However, without making any inquiry into those individuals or their interest in the case, the court directed them "[o]ut" of the courtroom. The court made no explicit finding that these individuals lacked a direct interest in the case, nor can we assume an implicit finding where there was no inquiry made into the nature of their relation to defendant. At the very least, once defendant's family members were brought to the court's attention, it should have inquired as to who those individuals were and their interest in the case. See *People v. Burman*,

2013 IL App (2d) 110807, ¶ 57, 986 N.E.2d 1249 (stating "[t]he trial judge followed section 115-11 by interviewing the spectators to determine their interest in the case"). The court's failure to make any inquiry indicates that it did not make an informed decision as to whether the family members brought to its attention had a direct interest in the proceedings prior to excluding them. Such action amounted to a blanket exclusion of anyone other than members of M.L.'s family and the media and constituted a violation of statutory requirements.

¶ 30        On appeal, the State points out that nothing in the record establishes that the family members excluded from the courtroom during M.L.'s testimony were defendant's immediate family members. We point out the equally obvious fact—that nothing in the record establishes that defendant's family members who were excluded were *not* members of his immediate family. The problem in this case is that the trial court failed to exercise its discretion and determine who these family members were and whether they had a direct interest in the case according to the statute. Moreover, it is not only immediate family members of a defendant who must be permitted to remain, and section 115-11 does not speak in such terms. Certainly, a defendant's immediate family members have an interest that is "direct" and not simply one based on curiosity of the proceedings. *Falaster*, 173 Ill. 2d at 228 ("The persons who were temporarily excluded from the proceedings were not members of the defendant's immediate family and thus did not have a direct interest in the outcome of the case."). However, section 115-11 sets forth no limitations on whom the trial court may determine, in its discretion, is a directly interested person. Nonimmediate family members may also qualify under the statute.

¶ 31        To support its argument that no reversible error occurred, the State relies on *Williams*, 2016 IL App (3d) 130901. There, the State moved to have the testimony of the minor

victim "received in chambers with defense counsel, the defendant, and the court reporter." *Id.* ¶ 10. Following a discussion that was held off the record, the trial court granted the State's motion. *Id.* The defendant did not object to the action but, on review, challenged the closing of the proceedings. *Id.* ¶ 17. Ultimately, the Third District found no reversible error, stating as follows:

> "In this case, clearly the victim was under 18, and the closure was only temporary (during her testimony), but in allowing her to testify in chambers, there was no indication whether people with a direct interest in the case or the media were also excluded. However, the defendant has not directed our attention to any person with a direct interest in the case or a member of the media who was excluded. The trial court held a sidebar to discuss the exclusion, specifically allowing the defendant, his counsel, the State, and [the victim's] foster mother to be present for [the victim's] testimony. Since trial judges are presumed to follow the law [citation], we presume that the judge allowed all those identified with a direct interest in the case to be present during [the victim's] testimony. While a better practice would have been to make those findings on the record, we cannot say that the trial court abused its discretion." *Id.* ¶ 22.

¶ 32    We find *Williams* distinguishable. In that case, the proceedings to determine any exclusions under section 115-11 were held off the record, and nothing of record indicated any error by the trial court. As a result, the reviewing court presumed that the trial judge had followed the law. Here, the record clearly and affirmatively demonstrates error, as defendant's family members were brought to the court's attention and then excluded during the minor

victim's testimony without any inquiry or consideration into their interest in the case.

¶ 33        Further, we find this court's decision in *Benson*, 251 Ill. App. 3d 144, illustrates proper compliance with statutory requirements. In that case, the State moved to clear the courtroom during the testimony of a minor victim pursuant to section 115-11. *Id.* at 145. The defendant objected on the basis that he had "friends and relatives in the courtroom" who "had an interest in the proceeding." *Id.* "The court then asked [the defendant's] counsel to identify the family members present and the nature of the interest of the other spectators ***." *Id.* Counsel provided a "generalized" response and "did not identify any *particular* spectator by name or relationship." (Emphasis in original.) *Id.* at 145-46. Further, upon inquiry by the court, counsel agreed that only " 'collateral relatives' " were present. *Id.* at 146. The court granted the State's motion. *Id.*

¶ 34        On review, this court found no abuse of discretion by the trial court. *Id.* at 149-50. Specifically, we stated as follows:

> "[B]efore the court entered the order that apparently excluded all spectators from the courtroom (mainly [the] defendant's collateral relatives and neighbors), the court expressly asked [the] defendant whether any spectators were members of his immediate family—persons who presumably would have a direct interest in the outcome of the case. At that point, the burden shifted to [the] defendant to specifically identify each spectator that he wished to exempt from the closure order and to define the interest of each. [The] [d]efendant's doing so would have given the court the opportunity to tailor the closure order to ensure that it was no broader than necessary. However, here [the] defendant's vague reference to his

- 14 -

collateral kin, neighbors, and acquaintances made no distinction between those possibly having a direct interest in the proceeding and those who did not. [The] [d]efendant's failure to provide the trial court with the information it requested waives this issue on appeal." *Id.*

¶ 35 Under section 115-11, the trial court has the responsibility to determine that persons excluded from courtroom proceedings have no direct interest in the case. In *Benson*, the trial court appropriately discharged that responsibility by expressly inquiring into the interest of courtroom spectators and determining their interest based on the information provided. Here, in contrast, the court, acting *sua sponte* in clearing the courtroom, made no inquiry into the interest of spectators even after defendant informed the court that his family members were present. Because the court conducted no inquiry into whether defendant's family members had a direct interest in the case, it did not properly discharge its statutory responsibilities. See *id.* at 149 ("The second limitation section 115-11 of the Code places upon the trial court is to direct that the court may exclude from the proceedings *only* those persons who, in the opinion of the court, do not have a direct interest in the case; the obverse of this means that those persons who *do* have a direct interest in the case, such as a defendant's immediate family, may not be excluded." (Emphases in original.)).

¶ 36 As stated, defendant argues that second-prong plain error occurred in this case. He contends that the trial court's error in failing to comply with section 115-11 was so serious that it affected the fairness of his trial and challenged the integrity of the judicial process. He also maintains the error was structural, requiring automatic reversal.

¶ 37 Again, a defendant's forfeiture of an issue may be excused "when a clear or

- 15 -

obvious error occurred" and the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *Sebby*, 2017 IL 119445, ¶ 48. "Under the second prong of plain-error review, [p]rejudice to the defendant is presumed because of the importance of the right involved, regardless of the strength of the evidence." (Internal quotation marks and emphasis omitted). *People v. Thompson*, 238 Ill. 2d 598, 613, 939 N.E.2d 403, 413 (2010).

¶ 38        Additionally, automatic reversal is required when the case on review involves a structural error. *Id.* at 608. Our supreme court has equated second-prong plain error with structural error (although second-prong plain error is not restricted to only the types of structural errors recognized by the supreme court (*People v. Clark*, 2016 IL 118845, ¶ 46, 50 N.E.3d 1120)). "Structural errors are systemic, serving to erode the integrity of the judicial process and undermine the fairness of the defendant's trial." (Internal quotation marks omitted). *Thompson*, 238 Ill. 2d at 608. "An error is typically designated as structural only if it necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence." *Id.* at 609. "The Supreme Court has recognized an error as structural only in a very limited class of cases," including those that involve the "denial of a public trial." *Id.*

¶ 39        In *Revelo*, 286 Ill. App. 3d at 267, the Second District held it was appropriate to presume prejudice to the defendant when the trial court abuses its discretion in its application of section 115-11. Specifically, the court stated as follows:

> "We hold that a defendant need not prove specific prejudice when a trial
> court excludes persons with a direct interest in the proceeding. As a practical
> matter, it is hard to envision what would constitute prejudice in the wake of a

section 115-11 violation. It would be difficult, if not impossible, to require a defendant to prove, or the State to disprove, prejudice. However, if section 115-11 is to confer anything beyond a meaningless right without a remedy, defendants must conclusively be presumed to be prejudiced by a section 115-11 violation. We so hold. This holding is bolstered by the practice of presuming prejudice when the constitutional guarantee of a public trial is violated. [Citations.] We see no reason why a different practice should apply under section 115-11." *Id.*

See also *Williams*, 2016 IL App (3d) 130901, ¶ 18 (addressing allegations of plain error with respect to the application of section 115-11 and noting that the improper closure of a courtroom "is a structural error that erodes the integrity of the judicial process and undermines the fairness of a trial" (internal quotation marks omitted)).

¶ 40        Thus, *Revelo* holds that a section 115-11 violation is a serious error that affects the fairness of a defendant's trial and challenges the integrity of the judicial process, amounting to second-prong plain error. The State criticizes *Revelo* on the basis that the court improperly "equated" a section 115-11 violation with a constitutional violation. See U.S. Const., amend. VI (guaranteeing a criminal defendant the right to a public trial). It cites this court's decision in *Benson*, 251 Ill. App. 3d 144, arguing that section 115-11 concerns only limited closures of trial court proceedings and, as a result, does not violate or implicate constitutional provisions.

¶ 41        As we have previously discussed, in *Benson*, the defendant appealed the trial court's decision to close the courtroom pursuant to section 115-11, arguing the court's clearing of the courtroom during the minor victim's testimony deprived him of his sixth amendment right to a public trial. *Id.* at 146. We disagreed, stating that "because section 115-11 of the Code

permits only limited closure of trial court proceedings, that section does not violate (or even implicate) any State or Federal constitutional provisions." *Id.* at 149. We also held that section 115-11's "explicit commands that the trial court may exclude neither the media *nor those spectators who have a direct interest in the case* steer it clear of any constitutional infirmity." (Emphasis added.) *Id.* Significantly, in *Benson*, we found that the record supported the trial court's decision to clear the courtroom and that no section 115-11 violation had occurred. *Id.* at 149-50.

¶ 42 We find *Benson* does not support the State's position. Most notably, that case did not involve a section 115-11 violation. Instead, there was compliance with statutory provisions, which allowed the trial court to "steer *** clear of any constitutional infirmity." *Id.* at 149. As discussed, the same is not true in the present case. Although the court placed no restrictions on the media, the record reflects it also gave no consideration to whether spectators it excluded from the courtroom had a direct interest in the case. Thus, while compliance with section 115-11 does not violate or implicate constitutional rights to a public trial (as in *Benson*), the same cannot be said where there is noncompliance with section 115-11.

¶ 43 Again, we note that an order by the trial court excluding spectators from the proceeding is sufficient where it satisfies section 115-11 of the Code, and a court's order need not also satisfy the more stringent limitations for the closure of judicial proceedings established by the United States Supreme Court in *Waller v. Georgia*, 467 U.S. 39, 48 (1984), and other cases. *Falaster*, 173 Ill. 2d at 225-28; see also *Waller*, 467 U.S. at 48 (stating "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider

- 18 -

reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure"). However, in this case, the trial court's exclusion of spectators from the courtroom complied with neither section 115-11 nor the more stringent Supreme Court limitations. Thus, we disagree with the State that a section 115-11 violation does not implicate a defendant's constitutional rights.

¶ 44 The Supreme Court has stated "that a public-trial violation is structural" due, in part, to "the difficulty of assessing the effect of the error." (Internal quotation marks omitted.) *Weaver v. Massachusetts*, 582 U.S. ___, ___, 137 S. Ct. 1899, 1910 (2017). In *Weaver*, the Supreme Court considered the effect of a structural error in the context of a public trial violation when the defendant did not preserve the error for direct review and, instead, raised the error later by claiming ineffective assistance of counsel in a collateral proceeding. *Id.* at ___, 137 S. Ct. at 1910. The Court determined that, in those particular circumstances, "*Strickland* prejudice is not shown automatically." *Id.* at ___, 137 S. Ct. at 1911 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). However, it also stated as follows:

> "[I]n the case of a structural error [based on the violation of the right to a public trial] where there is an objection at trial and the issue is raised on direct appeal, the defendant generally is entitled to automatic reversal regardless of the error's actual effect on the outcome." (Internal quotation marks omitted.) *Id.* at ___, 137 S. Ct. at 1910.

The Court explained its different treatment of the same structural error, reasoning that a contemporaneous objection to a courtroom closure allows the trial court to open the courtroom or explain its reasoning for keeping it closed, whereas raising the issue for the first time in an

ineffective-assistance-of-counsel claim deprives the court of the chance to cure the violation. *Id.* at ___, 137 S. Ct. at 1912. It further noted that objections raised at trial and on direct review diminish "the systemic costs of remedying the error." *Id.* at ___, 137 S. Ct. at 1912.

¶ 45       We find *Weaver* instructive. Here, the trial court noted defendant's objection to its courtroom closure for the record and the issue is being raised on direct review rather than in the context of a collateral proceeding premised on an ineffective-assistance-of-counsel claim. Further, the record shows the trial court did not follow the requirements of section 115-11 when it closed the courtroom, raising constitutional concerns regarding defendant's right to a public trial. As a result, we agree with defendant that the trial court's error amounted to a public trial violation, which is a structural error. Accordingly, defendant has established the occurrence of second-prong plain error, requiring reversal. Given our resolution of this issue, we find it unnecessary to address the remaining claims of error raised by defendant on appeal regarding allegations of ineffective assistance of trial counsel and an abuse of the trial court's discretion during sentencing.

¶ 46                               3. *The Dissent*

¶ 47       The dissent agrees that the trial court failed to comply with the requirements of section 115-11. Nevertheless, it finds that the court's failure to comply with the statute does not amount to a public trial violation entitling defendant to a new trial. In so finding, the dissent appears to argue that we may not properly determine that a public trial violation occurred for two reasons: (1) because defendant failed to present a sufficient record showing that persons with a direct interest in his case were actually excluded and (2) because the media was not excluded from the courtroom.

¶ 48    First, a showing by defendant that the trial court excluded a person with a direct interest was not necessary to establish an improper closure in this case because the record otherwise showed the trial court's failure to abide by section 115-11. Specifically, a section 115-11 violation and an improper closure occurred here because the trial court—charged by statute with exercising its discretion to determine the interest of spectators it intended to exclude—obviously and unmistakably failed to exercise that discretion. In other words, there was a sufficient record from which to evaluate the trial court's conduct. Here, our finding of a violation of section 115-11 is based not on a determination that the court actually excluded a person with a direct interest but rather on its obvious failure to undertake any determination of interest in the first instance. The dissent misapprehends the majority decision by asserting that it is based on improper speculation that individuals with a direct interest were excluded. Ultimately, we do not know the interest of those excluded because the trial court did not fulfill its statutory responsibility to make that determination.

¶ 49    As discussed, the record clearly establishes that defendant brought the presence of his family members to the trial court's attention and the court excluded them without any consideration of their interest. The dissent would absolve the trial court of any responsibility to inquire further under section 115-11—a position for which we find no legal support. In fact, it has been held that, "[g]iven the seriousness of the potential harm, each trial judge must be alert and proactive in managing his or her courtroom to prevent violations of this core constitutional right [(the right to a public trial)], regardless of whether the attorneys assist in the process." *People v. Evans*, 2016 IL App (1st) 142190, ¶ 14, 69 N.E.3d 322; *Presley v. Georgia*, 558 U.S. 209, 214 (2010) (*per curiam*) (stating a trial court is required to consider reasonable alternatives

- 21 -

to closure, one of the required *Waller* factors, even when not offered by the parties).

¶ 50    Second, as stated, the dissent also appears to suggest that no public trial violation can be found when there is media presence in the courtroom. However, if nonexclusion of the media were all that was required to avoid constitutional concerns, even a defendant's demonstration that his immediate family members were excluded would not amount to a public trial violation. Plainly, this is incorrect.

¶ 51    In furtherance of its argument, the dissent points out that *Benson* contains the statement that section 115-11 neither violates nor implicates constitutional provisions (see *Benson*, 251 Ill. App. 3d at 149). *Infra* ¶ 68. As discussed, *Benson* involved full compliance with section 115-11. It also specifically held that section 115-11's "explicit commands that the trial court may exclude neither the media *nor those spectators who have a direct interest in the case* steer it clear of any constitutional infirmity." (Emphasis added.) *Benson*, 251 Ill. App. 3d at 149. Certainly, it is not enough for a trial court to simply announce that it is acting pursuant to section 115-11 to avoid constitutional concerns. Rather, the court must also abide by its requirements. Where there is noncompliance with the statute's requirements, constitutional concerns are implicated.

¶ 52    The dissent also relies on *People v. Priola*, 203 Ill. App. 3d 401, 420, 561 N.E.2d 82, 96 (1990), a Second District case that concluded that a trial court's failure to comply with section 115-11 did not result in plain error. However, in that case, the only apparent basis for finding a section 115-11 violation was the lower court's failure to also comply with the Supreme Court's more stringent *Waller* criteria. *Id.* ("Since the trial judge did not comply with the *Waller* criteria, as we have previously indicated, in closing the trial to nonmedia spectators during

- 22 -

A.A.'s testimony, the judge also failed to comply with section 115-11 as we have interpreted it."). This notion in *Priola* was later repudiated by our supreme court. See *Falaster*, 173 Ill. 2d at 227 ("[A] trial judge's order *** need[s] to satisfy only the requirements of section 115-11."). *Priola* did not address noncompliance with section 115-11 at all, much less the violation that occurred in this case. Nor did *Priola* involve facts like the operative ones in this case—the trial court's failure to determine the interests of individuals it excluded from the courtroom when those individuals were brought to its attention by the defendant and represented to be family members of the defendant. We find *Priola* is both analytically and factually inapposite.

¶ 53    Additionally, the dissent argues that "the majority places the entire obligation to ensure the issue is properly preserved on the trial court." *Infra* ¶ 82. We find the dissent mischaracterizes the majority holding. Had defendant remained entirely silent during the portion of the underlying proceedings at issue, we acknowledge that the record would have been insufficient to demonstrate error. For purposes of appeal, a defendant still must present a sufficient record from which the trial court's conduct can be evaluated. However, as discussed, that was done here. There was a sufficient showing on the record that the trial court failed to determine the interest of those it excluded, resulting in an overstepping of its authority under section 115-11.

¶ 54    Ultimately, the trial court in this case closed the proceedings without complying with the requirements set forth in section 115-11. Accordingly, there was an improper closure and a violation of the defendant's right to a public trial. Although the dissent seems to suggest otherwise, a public trial violation is unequivocally a structural error. *Weaver*, 582 U.S. at ___, 137 S. Ct. at 1908 ("[A] violation of the right to a public trial is a structural error."). As

discussed, per *Weaver*, we find reversal is necessary in this case.

¶ 55                                    III. CONCLUSION

¶ 56        For the reasons stated, we reverse the trial court's judgment, and the cause is remanded.

¶ 57        Reversed and remanded.

¶ 58        JUSTICE DeARMOND, dissenting:

¶ 59        I agree the trial court failed to comply with the requirements of section 115-11 when it excluded spectators from defendant's trial during the testimony of the minor victim. Moreover, I agree with the majority that defendant forfeited his argument by failing to properly preserve the issue for appellate review. However, I part company with the majority in its finding that defendant established second-prong structural error entitling him to a new trial. The majority places the entire burden on the trial court, while I believe a defendant bears some level of responsibility to provide a court of review with an adequate record before he may seek the drastic relief to which he might otherwise be entitled for a claimed "structural error." Accordingly, I respectfully dissent.

¶ 60        In order to preserve an alleged error for appeal, a defendant must object at trial and file a written posttrial motion. *People v. Bates*, 2018 IL App (4th) 160255, ¶ 69, 112 N.E.3d 657. If he fails to do either, forfeiture then results. *Id.* As the majority notes, defendant alleged he is entitled to relief under the second prong of the plain error doctrine.

¶ 61        Our supreme court has "equated the second prong of plain-error review with structural error, asserting that 'automatic reversal is only required where an error is deemed "structural," *i.e.*, a systemic error which serves to "erode the integrity of the judicial process and

- 24 -

undermine the fairness of the defendant's trial." ' [Citations.]" *Thompson*, 238 Ill. 2d at 613-14. "An error is typically designated as structural only if it necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence." *Id.* at 609. Structural errors have been found only in a limited class of cases, including those involving "a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction." *Id.*; see also *In re Samantha V.*, 234 Ill. 2d 359, 378-79, 917 N.E.2d 487, 499 (2009) (finding error under the second prong based on the trial court's failure to apply the one-act, one-crime rule); *People v. Walker*, 232 Ill. 2d 113, 131, 902 N.E.2d 691, 700 (2009) (finding error under the second prong based on the trial court's failure to exercise discretion in denying a continuance).

¶ 62        This court has noted that, "[w]hen a defendant claims second-prong error, he must prove that a structural error occurred." *Bates*, 2018 IL App (4th) 160255, ¶ 72 (citing *Thompson*, 238 Ill. 2d at 613-14). Since a structural error is one that renders the trial fundamentally unfair or unreliable, the defendant bears the burden of persuasion at all times under a plain error analysis. *Id.* ¶¶ 72-73; see also *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1187 (2010) (stating the defendant has the burden of persuasion under both prongs of the plain error doctrine). If the defendant fails to satisfy his burden of persuasion, "the procedural default will be honored." *People v. Eppinger*, 2013 IL 114121, ¶ 19, 984 N.E.2d 475. Here, the majority places no burden on defendant whatsoever to establish a second-prong error, having concluded the trial court's failure to fully comply with section 115-11, in itself, establishes a structural error. Such a

finding, in my opinion, is not supported by previous holdings of the United States Supreme Court or even this court.

¶ 63    As the majority notes, the only record of what transpired in discussions concerning the closing of the courtroom during the victim's testimony consists of three brief colloquies between the trial court and counsel for the State and defendant. At the outset of the trial, when the court indicated its intention to clear the courtroom during the minor victim's testimony, the following exchange occurred:

> "THE COURT: When [M.L.] testifies, I want the courtroom cleared except for family members.
>
> MR. LARSON [(ASSISTANT STATE'S ATTORNEY)]: Thank you, Your Honor.
>
> MR. ALLEGRETTI [(DEFENSE ATTORNEY)]: I'm sorry, Judge. [Defendant's] family members are here. Is that—are you barring them?
>
> THE COURT: Out."

Defense counsel interposed no objection on the record, made no offer of proof, made no request for clarification in order to ascertain who exactly was being barred, and did not offer any argument in opposition to the court's cryptic statement, "Out."

¶ 64    The next discussion about closing the courtroom occurred prior to opening statements:

> "THE COURT: All right. Well, pursuant to [section 115-11] where the alleged victim of the offense is a minor under

- 26 -

eighteen years of age, the court may exclude from the proceedings while the victim is testifying all persons who, in the opinion of the court, do not have a direct interest in the case except the media. So I'm going to order that the courtroom be cleared, with the exception of the media, when [M.L.] testifies. I will note [defense counsel's] objection."

Again, defense counsel did not seek to place his objection or argument on the record, note which family members were present, or seek a clarification of the trial court's apparent blanket order without the evaluation required under section 115-11.

¶ 65    Lastly, after opening statements and immediately before M.L. testified, the following exchange took place:

"THE COURT: All right. At this point pursuant to [section 115-11], I'm going to clear the courtroom. Mr. Larson, you said the grandmother is going to be present.

MR. LARSON: Yes, Your Honor.

THE COURT: Who else?

MR. LARSON: Your Honor, her father and stepfather we would also ask to be present.

THE COURT: Who is in the back of the courtroom? Who is the gentleman sitting there? And then the rest of the people on this side. All right. As soon as we get done with her testimony, I will bring the rest of the people in the courtroom."

Again, defense counsel remained silent. There was no specific objection, request for clarification, or offer to provide the trial court with the identities of those family members defendant wished to be allowed to remain. The burden is on the defendant to provide the reviewing court with an adequate record. " 'It is well settled that any doubts arising from the incompleteness of the record will be resolved against the appellant, as it is the burden of the appellant to provide a sufficiently complete record to support a claim of error.' [Citation.]" *People v. Kelly*, 397 Ill. App. 3d 232, 262, 921 N.E.2d 333, 360 (2009).

¶ 66     A review of the trial court exchanges reveals defense counsel made no effort to make a record from which a second-prong plain error analysis could take place without substantial conjecture by this court. We are forced to speculate repeatedly about those things missing from the record or left unclear and unexplained by defendant. Having supposedly made the objection, which, ironically, even that is unclear on this record, defense counsel had the responsibility to present an adequate record from which this court could assess the conduct of the trial court. Nothing in the record reveals the "family members," whom defense counsel referred to in the first colloquy, were immediate or that the family members permitted to remain were not also related to defendant, either by blood or marriage, since he was the uncle of the victim. The majority correctly disregards defense counsel's affidavit on appeal, although it expressly identifies the persons in the affidavit defendant says were excluded.

¶ 67     The majority contends the lack of an adequate record, which was within the control of defendant, permits it to conclude family members with a direct interest in the case were removed from the courtroom, without inquiry by the trial court and to the detriment of defendant. In addition, the majority seems to believe, once it has shown the court failed to

comply with section 115-11, we need not concern ourselves with issues of waiver or forfeiture at all since the court's failure to follow the requirements of the statute entitle a defendant to automatic reversal and remand as a "structural error," *per se*.

¶ 68     The majority finds this to be a structural error requiring automatic reversal because the trial court's failure to comply with section 115-11 rises to the level of a violation of the constitutional right to a public trial. However, this court in *Benson*, 251 Ill. App. 3d at 149, previously held section 115-11 neither violates nor implicates state or federal constitutional provisions.

> "We hold that because section 115-11 of the Code permits only limited closure of trial court proceedings, that section does not violate (or even implicate) any State or Federal constitutional provisions. We further hold that the criteria discussed by the United States Supreme Court in *Press-Enterprise* and *Waller* do not apply to closures ordered pursuant to section 115-11 of the Code." *Id.*

One reason why the criteria discussed in *Press-Enterprise* and *Waller* would not apply is the simple fact that the criteria developed in both cases related to closures that included the media. It is the exclusion of the media that deprives a defendant of his constitutional right to a public trial. Since section 115-11 expressly prohibits such exclusion, it falls outside the bounds of those United States Supreme Court pronouncements.

¶ 69     In *Benson*, this court properly concluded the statute contains three limitations on the trial court's authority to close a courtroom that remove it from scrutiny under the sixth

amendment of the United States Constitution: (1) the blanket prohibition against exclusion of the media, (2) the limitations on exclusion of others who do not have a direct interest in the proceedings, and (3) the temporal limitation involving only that period of time during which the child victim testifies. *Id.* at 149. Citing at length our supreme court's decision in *Holveck*, 141 Ill. 2d 84, this court proclaimed that, " '[b]y allowing the media to attend, [the statute] preserve[s] the defendant's sixth amendment right to a public trial.' " *Benson*, 251 Ill. App. 3d at 149 (quoting *Holveck*, 141 Ill. 2d at 101); see also *People v. Leggans*, 253 Ill. App. 3d 724, 728, 625 N.E.2d 1133, 1137-38 (1993) (finding no section 115-11 error and noting the prosecutor's argument that "the presence of the media ensured the defendant would receive a public trial").

¶ 70　　　　　The majority ignores its own language in *Benson* when it mischaracterizes my reliance on *Benson*. There is no question the trial court failed to comply with section 115-11. There is equally no question it should have done more. The failure to make further inquiry was error. This dissent does not "absolve the trial court of any responsibility to inquire further under section 115-11," as claimed by the majority. *Supra* ¶ 49. I question, based upon this court's own citation of *Holveck*, the position the majority now takes that a violation of section 115-11 is *a priori*, a structural error of constitutional dimension as opposed to the violation of a statute. When read in context, it is even more clear the court in *Holveck* and this court in *Benson* recognized the defendant's right to a public trial was protected by allowing media presence.

　　　　　　　"It is clear from the record that the judge considered the

　　　　　　　interests of both the defendant and the minor witnesses. *By*

　　　　　　　*allowing the media to attend, the judge preserved the defendant's*

　　　　　　　*sixth amendment right to a public trial. The trial judge considered*

*that the media presence is, in effect, the presence of the public.*
Too, the judge did not allow persons without an interest to attend.
The judge explained that the age of the witnesses, their
psychological immaturity, the nature of the case, and the wishes of
the victim contributed to his decision. Each of these factors was
cited by the appellate court as being determinative of the propriety
of the closure of a trial. Therefore, the appellate court erred in
holding that the trial judge improperly closed the public trial."
(Emphasis added.) *Holveck*, 141 Ill. 2d at 101-02.

¶ 71 Media presence was the one factor upon which both this court in *Benson* and the supreme court in *Holveck* relied to find the defendant's right to a public trial was protected. The remaining considerations were all victim-oriented and related to those persons being excluded to protect the victim. Victim considerations are not the issue here. Having violated the statute, the trial court erred; however, it remains the burden of defendant, especially under a plain error analysis, to prove it to be a second-prong structural error requiring reversal. *Bates*, 2018 IL App (4th) 160255, ¶¶ 72-73. Noncompliance with the statute would not necessarily implicate constitutional concerns unless the basis for noncompliance was exclusion of the media.

¶ 72 From this record, we have no way to determine whether witnesses with a direct interest were excluded because defendant, much like the defendant in *Benson*, did nothing to identify which family members were present or what their interest may be when asked by the trial court. Here, even after the court asked "who else?" and inquired about the other people "in the back of the courtroom. Who is the gentleman sitting there? And then the rest of the people on

this side," defendant's counsel said nothing. The majority, again speculating to fill in the blanks of this woefully incomplete record, has concluded this conversation was between the court and the prosecutor. I must respectfully point out there is absolutely nothing in this record from which to conclude the court is "conversing with the prosecutor." The court reporter documents whoever speaks. That is all. Just because defendant's counsel said nothing does not mean he was not part of the conversation. Had he spoken up, it would be evident he was. His silence does not equate to concluding he was not.

¶ 73        More importantly, this is the third discussion about clearing the courtroom and it took place long after the first, which occurred at the very beginning of the trial. Since then, the trial court and both counsel have discussed trial procedure and logistics and addressed various pretrial issues. Further, at this third interchange, the court specifically asked about various people in the back of the courtroom. This would have been the time for defendant's counsel to note who they were and renew his request now that it was apparent who was being allowed to remain on the State's behalf. Speculating just like the majority, since the State did not respond to the court's inquiry about the people in the back of the courtroom and the prosecutor was never reluctant to speak up during these conversations, it is just as reasonable to conclude the people in the back must have been family of defendant. His counsel should have said so and followed up by seeking clarification of the court's first comment "out," in light of the fact that, since then, the State has sought and obtained approval for three specific family members of the victim to be present. This was a substantial change from the court's comments at the first conversation upon which the majority places such weight when the court said "I want the courtroom cleared except for family members" and the second conversation when the court said it was ordering the courtroom cleared

"with the exception of the media" and, now, the third where the State identifies a grandmother, father, and stepfather specifically. If anything, counsel would at this point have had some leverage with which to argue on behalf of specific family members if they were of similar relationship to defendant, or at least force the court to explain why it was making a distinction. This would only be expected if counsel was sincere in his attempt to make a record of an issue defendant might seek to pursue on appeal if necessary.

¶ 74         Along with *Benson*, I find *Priola*, 203 Ill. App. 3d 401, instructive. In that case, the defendant argued the trial court erred in closing the courtroom to nonmedia spectators during the victim's testimony. *Id.* at 419. When discussing the failings of the trial court's order permitting closure, the Second District concluded "the *Waller* criteria were not met in this case." *Id.* Although the *Waller* criteria *per se* are not at issue in a closure under section 115-11 (see *Falaster*, 173 Ill. 2d at 227), the deficiencies noted by the court in *Priola* were (1) no specific findings in support of closure and (2) no indication in the record the court considered alternatives to closing during the victim's testimony. *Priola*, 203 Ill. App. 3d at 419. Nothing about that conflicts with what our supreme court found necessary in *Holveck* or this court in *Benson*. The trial court is still required to provide sufficient reasons to warrant closure and needs to make sure its rationale is in the record. The only thing the *Benson* court criticized about *Priola* was its holding the *Waller* criteria were to be applied under section 115-11.

¶ 75         While the Second District found the trial court failed to comply with section 115-11, it also found the defendant forfeited his argument by failing to object at trial or raise the issue in his posttrial motion. *Id.* at 420. Moreover, the appellate court declined to apply the plain error

rule under both prongs, ruling the evidence was not closely balanced and on the second prong as follows:

> "Furthermore, this error did not deprive defendant of a fair trial. The purposes served by requiring public trials are encouraging witnesses to come forward, discouraging perjury, and helping to ensure that the judge and prosecutor carry out their duties in a responsible manner. [Citation.] Since most of the trial was open to the public *and the media was not excluded from any portion of the trial*, we do not believe these objectives were seriously compromised by the trial court's action." (Emphasis added.) *Id.* at 421.

¶ 76       Here, in closing the courtroom during M.L.'s testimony, the trial court specifically allowed any members of the media to remain. As our supreme court has stated, " 'media presence is, in effect, the presence of the public.' " *Falaster*, 173 Ill. 2d at 227 (quoting *Holveck*, 141 Ill. 2d at 101). Further, the court in *Falaster* noted how application of section 115-11 did not affect a defendant's sixth amendment right to a public trial. There, the defendant argued the trial court's closure of the courtroom under section 115-11 had to satisfy not only the statute but also the more stringent limitations referenced in *Waller*, *Press-Enterprise*, and *Globe Newspaper*. The court, citing *Benson*, found it did not. *Id.* (stating it agreed "with the State that the trial judge's order here needed to satisfy only the requirements of section 115-11").

¶ 77       Although the majority cited *Falaster* several times, it failed to note or comment on the clear language contained therein. Referencing *Holveck*, the supreme court in *Falaster* said

"[t]he court observed that, '[b]y allowing the media to attend, the judge preserved the defendant's sixth amendment right to a public trial. The trial judge considered that the media presence is, in effect, the presence of the public.' " *Id.* (quoting *Holveck*, 141 Ill. 2d at 101). Nonexclusion of the media moves this from a sixth amendment constitutional issue to a statutory violation. Thus, automatic reversal is inappropriate without more. The issue then centers again on whether persons excluded from the courtroom had a direct interest in the case. We do not know. The majority cannot say because the record does not indicate who was removed. It could have been a parent, a sibling, or a long-lost cousin twice removed. Again, we do not know, and it is inappropriate to assume a family member with a direct interest was excluded in the absence of any evidence in the record.

¶ 78          The majority's reliance on *Revelo* is unavailing, as that case is readily distinguishable. There, the defendant objected to the State's request prior to the victim's testimony to exclude all persons except the defendant, his counsel, and a victim counselor. *Revelo*, 286 Ill. App. 3d at 264. At that time, the defendant argued his mother, father, and brothers had a direct interest in the case and thus could not be excluded under section 115-11. *Id.* The trial court allowed the media to remain but failed to expressly determine whether the defendant's mother, father, and brothers possessed a direct interest in the case. *Id.* In finding the court abused its discretion, the Second District stated it would not conclude the court's removal of the defendant's parents and siblings constituted an implicit finding they did not have a direct interest in the case. *Id.* Further, the "threshold question" in *Revelo* was whether a section 115-11 closure must comport with the *Waller* limitations, which we already know to be answered in the negative. The only portion of *Revelo* I would consider relevant to our issue is its citation of

- 35 -

*Falaster* for the finding that, since the "media were permitted to attend fully," "no danger of a closed trial existed." See *id.* at 265. Thus, the Second District also agreed that allowing attendance of the media precludes a finding of a sixth amendment violation. What we are left with is a statutory violation, which does not warrant structural error analysis.

¶ 79　　　　　In contrast to this case, the record in *Revelo* revealed the defendant's family members who were removed. Here, we are left to speculate that defendant had family members with a direct interest in his case that he wanted in the courtroom. How can we make such an assumption without knowing who the people are? Defense counsel was the only person in a position to clarify who was present in order to learn whether their identity or relationship to defendant might have impacted the trial court's ruling, especially in light of the exceptions which had been made for the State. The court had no idea who the spectators were or to whom they were related. All it could do was inquire and expect counsel to provide the information necessary to determine who could remain. It did so when it asked "who else" and specifically inquired about certain persons in the courtroom at the time.

¶ 80　　　　　In *Thompson*, 238 Ill. 2d at 608-09, our supreme court held a violation of Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) did not automatically constitute a structural error warranting reversal. Noting the purpose of Rule 431(b) admonishments is to insure a fair and impartial jury, the court stated "[a] finding that defendant was tried by a biased jury would certainly satisfy the second prong of the plain-error review because it would affect his right to a fair trial and challenge the integrity of the judicial process." *Thompson*, 238 Ill. 2d at 614. However, the court held it could not be presumed that a jury was biased solely because of a trial court's failure to properly admonish potential jurors under Rule 431(b). *Id.* Instead, the court

concluded the defendant had not carried his burden of persuasion under the second prong of the plain error doctrine because he had not presented any evidence of a biased jury. *Id.* at 615.

¶ 81　　　　This same rationale was applied in *People v. Radford*, 2018 IL App (3d) 140404, 117 N.E.3d 386, a partial closure case that did not involve section 115-11 and therefore had to be analyzed under the more strict sixth amendment criteria. There, the defendant argued automatic reversal was required due to the trial court's partial closure of the courtroom during *voir dire*. *Id.* ¶ 57 (citing the *Waller* criteria). Citing *Thompson*, the Third District found the defendant's failure to object or raise the issue in a posttrial motion constituted forfeiture but still considered the issue under second-prong plain error. It noted how such error must be found to have deprived the defendant of a fundamentally fair trial or undermined the integrity of the judicial process. *Id.* ¶ 52 (citing Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) and *People v. Piatkowski*, 225 Ill. 2d 551, 564-65, 870 N.E.2d 403, 410 (2007)). The court went on to point out that " 'the term "structural error" carries with it no talismanic significance as a doctrinal matter' " but merely connotes it is not subject to harmless error analysis. *Id.* ¶ 55 (quoting *Weaver*, 582 U.S. at ___, 137 S. Ct. at 1910). Public trial violations are subject to a " 'triviality standard' " that considers whether the actions of the court and the effect those actions had on the conduct of the trial deprived the defendant of the sixth amendment protections of a public trial, namely (1) to ensure a fair trial, (2) to remind the prosecutor and the judge of their responsibility to the accused and the importance of their functions, (3) to encourage witnesses coming forward, and (4) to discourage perjury. *Id.* ¶ 56. The *Radford* court referenced *Weaver* when it said

> "potential errors in making these difficult decisions [(closure of the courtroom)] can be cured or more thoroughly addressed when a defendant contemporaneously

objects to a courtroom closure. [Citation.] In other words, without contemporaneous objection, the trial court would not likely cure a violation or formally express its findings on the record." *Id.* ¶ 58.

Absent a clearly expressed objection, request for clarification, offer of proof, or identification of the persons present, defendant did not provide the trial court with the opportunity to cure the error or formally express its findings on the record.

¶ 82        Here, the majority places the entire obligation to ensure the issue is properly preserved on the trial court. I find the court's obligation is to avoid making the error and defendant's obligation is to properly preserve it for review. While the denial of a public trial may constitute structural error, it cannot be presumed simply because the trial court failed to follow the requirements of section 115-11, so long as there was no exclusion of the media. Like in *Thompson*, defendant still has the burden of establishing persons with a direct interest in his case were excluded in error, thereby depriving him of his right to a public trial. Otherwise defendant could make the allegation on the barest of records and demand a new trial. Without knowing who was excluded, however, defendant cannot satisfy his burden in this case.

¶ 83        The majority also finds support in *Weaver*, 582 U.S. ___, 137 S. Ct. 1899. *Weaver* dealt with an ineffective assistance of counsel claim, an issue defendant does not even raise on appeal. *Id.* at ___, 137 S. Ct. at 1906-07. In *Weaver*, the defendant's claim was based on defense counsel's failure to object to the trial court's order excluding all spectators during jury selection due to inadequate seating. *Id.* at ___, 137 S. Ct. at 1906. Those removed for two days of jury selection included the defendant's mother and her minister. *Id.* at ___, 137 S. Ct. at 1906. The Supreme Court found the violation to be structural under federal constitutional guidelines (the

same guidelines this court held were not implicated by section 115-11 in *Benson*, 251 Ill. App. 3d at 149) but noted even though a public trial violation may constitute a structural error, it does not always lead to fundamental unfairness. *Weaver*, 582 U.S. at ___, 137 S. Ct. at 1911 (stating "not every public-trial violation will in fact lead to a fundamentally unfair trial"). The timing of when the objection was raised or preserving the structural error was of significance to the court, since raising it at trial allows the trial court the opportunity to remedy the situation, while raising it later within the context of an ineffective-assistance-of-counsel claim does not. *Id.* at ___, 137 S. Ct. at 1912.

¶ 84          Both the majority and I find *Weaver* instructive, but for entirely different reasons. The majority somehow extrapolates from the *Weaver* Court's rationale that defendant's obscure objection, if any, properly preserved this structural error and the trial court's failure to comply with section 115-11 now makes this a constitutional public trial violation warranting outright reversal. Such a conclusion seems to conflict with this court's holding in *Benson*, as well as our supreme court in *Falaster* and *Holveck*. In my humble opinion, it also finds no support in the United States Supreme Court cases cited since they almost always involved exclusion of the media—something our supreme court said in *Falaster* was the one thing protecting a defendant's right to a public trial. I find *Weaver* instructs us that without a public trial violation, which in and of itself does not necessarily equate to fundamental unfairness (the basis for automatic reversal without a showing of prejudice), a defendant is not necessarily entitled to such relief. The failure of a defendant to adequately preserve his objection at trial, allowing the trial court the opportunity to fully address the issue, may preclude him from raising the issue later. Further,

unlike the majority's finding, the level of speculation we must engage in to find a record sufficient to support defendant's claim is beyond the plain error analysis.

¶ 85    I would also note defense counsel may have had a legitimate reason for not objecting at trial and for not raising the issue in a posttrial motion. For one, the right may have held little importance to him. Two, perhaps defendant did not want certain family members in the courtroom during M.L.'s testimony and had no objection to their removal. I find it improper to engage in plain error review when the issue at hand may have been a reasoned decision not to object. Moreover, "if 'those trial tactics are to be the subject of scrutiny, then a record should be developed in which they can be scrutinized.' [Citation.]" *In re Carmody*, 274 Ill. App. 3d 46, 56, 653 N.E.2d 977, 984 (1995). Whether counsel was deficient in his strategy, whether defendant's family members with a direct interest in the case were actually removed from the courtroom during M.L.'s testimony, and whether defendant was prejudiced as a result are matters best left for proceedings under the Post-Conviction Hearing Act (725 ILCS 5/122-1 to 122-7 (West 2016)). Had defendant identified the persons and were they found to have a direct interest, the trial court could have amended its order and avoided error or, if found to have no interest, maintained its order and committed no error. By saying and doing nothing, defendant wins a reversal of his criminal conviction and remand for new trial. It should not be so easy to avoid the responsibility of making a reviewable record and yet achieve a reversal where there is no evidence the failure to comply in any way deprived the defendant of the sixth amendment protections of a public trial, namely (1) to ensure a fair trial, (2) to remind the prosecutor and the judge of their responsibility to the accused and the importance of their functions, (3) to encourage witnesses coming forward, and (4) to discourage perjury.

¶ 86          There is no question the trial court could have alleviated the problem by requiring counsel to state his objection for the record, if he had any. The court should have conducted greater inquiry into the identity and relationship of the people present and required defense counsel to provide that information. The majority correctly points out how *Benson* sets forth the proper procedure, none of which was done here. There is also no question a public trial violation is a structural error. However, our supreme court in *Falaster* and *Holveck*, as well as this court in *Benson*, said inclusion of the media protects a defendant's right to a public trial. The result is a statutory violation by the trial court, which is error. Under a second-prong plain error analysis, however, it is defendant's burden to establish a structural error, and he cannot sustain that burden on such a woefully inadequate record. For these reasons, I respectfully dissent.